81 511<br>50a 445

# Toledo, Wabash and Western Railway Co.

*v.*

## Jerry Gilvin.

1. **Delivery** *of grain sold—what constitutes—rights of seller as to possession.* If a man places his wheat in a railroad car, under a contract to sell it, by the terms of which contract it is not to be removed until paid for, he does not thereby part with his right of possession to the wheat, and he has the right to remove the same from the car if not paid for.

2. Where a man agrees to buy wheat, to be delivered on a car at a railroad station, to be paid for on delivery, and not to be removed until paid for, and procures a car to be sent to the station, and, before any wheat is put into it, represents to the railroad company that the car is loaded with wheat, and, on the strength of such representation, obtains a bill of lading therefor, and afterwards the seller of the wheat, in pursuance of his contract, and without any knowledge of the fraudulent transaction of the buyer, puts the wheat into the car, he does not thereby deliver the wheat, but only puts it in a position to be delivered upon payment of the purchase money, and if not paid, he has the right to remove it from the car, as against the railroad company as well as against the purchaser.

3. **Title**—*can not be divested without consent or fault of owner.* A person can not be divested of his property without his consent, unless he is guilty of some default or improvidence, on the faith of which others have so acted that it would be unjust to them for him to assert his title to his property.

Writ of Error to the Circuit Court of Pike county; the Hon. C. L. Higbee, Judge, presiding.

Messrs. Hay, Greene & Littler, for the plaintiff in error.

Mr. I. S. Irwin, for the defendant in error.

Mr. Justice Dickey delivered the opinion of the Court:

Gilvin, the defendant, had a warehouse at a side-track, or switch, on plaintiff's railway, at a point called Hadley, from which shipping of grain was usually done through the agent of plaintiff at Barry, a station on the railway, a few miles west of Hadley. Plaintiff kept no agent at Hadley, but had an agent at Bayless, a station a few miles east of Hadley.

Smith was a transient man, buying and shipping wheat from that region, and Potter and Donley had acted as Smith's agents about this business.

On Wednesday, the 5th of August, Smith, in person, in the presence of Donley, made with Gilvin a contract of purchase for 254 bushels of wheat, which Gilvin had in his warehouse. The wheat was to be loaded into car No. 1544, then under the control of Smith, and standing upon the switch, and which had been put there by the plaintiff at Smith's request. By the express terms of the contract, the wheat was to be paid for upon delivery, and the wheat was not to be moved until Gilvin was paid, and Donley was to come to Hadley the next day and help load the wheat.

On Thursday, Gilvin, with the assistance of Potter, who came in Donley's stead, put the wheat into the car. They began after ten in the morning and finished the work that afternoon. Smith did not appear or pay for the grain. On Friday or Saturday, Gilvin, seeing Donley, inquired about Smith, and it was suggested that he had probably gone to Toledo for money. On Tuesday, Gilvin (having on Monday heard that Smith had absconded) took this 254 bushels of wheat from this car No. 1544 and restored it to his warehouse.

It turns out that, on the 5th of August, when this car was in the possession of Smith, and standing empty upon the switch at Hadley, the agent of the railroad company at Bay-

less, upon the false statement of Smith that he had loaded the car with wheat, gave Smith a bill of lading, stating that the railroad company had received from Smith a car of wheat, weight 20,000 pounds, to be forwarded by car 1544 to W. T. Walker & Co., at Toledo, and that, on Thursday morning, while this car was still empty, and while he had no wheat whatever, Smith negotiated this false bill of lading to the bank at Pittsfield, and transferred it to the bank as collateral, drawing a draft for $350 on Walker & Co., Toledo, and, on the faith of the transferred bill of lading, the bank bought the draft.  The draft was protested, and the railroad company, afterwards, was compelled and did pay the draft, and the draft and false bill of lading were transferred to the railroad company by the bank.

It seems, from the proofs, that Gilvin knew nothing of the bill of lading and draft until after he had restored the wheat to the warehouse, and the railroad company and the bank knew nothing of the placing of this wheat in the car No. 1544, by Gilvin, until after it was restored to the warehouse.

The railway company, claiming that the wheat, when put in the car, became, by virtue of the bill of lading, the property of the bank, and that, by operation of law, upon the facts stated, the railway company succeeded to the rights of the bank, brought this action of trespass against Gilvin.  Gilvin pleaded not guilty, and the issue was tried by a jury.

At the close of the evidence, the court gave the jury the following instruction:

"The jury are instructed, that if they believe, from the evidence in the case, that upon the request of one Isaac S. Smith, the plaintiff's agent at Bayliss station sent to Hadley switch freight car numbered 1544, to be loaded with wheat for said Smith, to be transported over said plaintiff's railway, and said freight car was so furnished to said Smith at said station in pursuance of his request, and was there loaded with 254 bushels of wheat for said Smith, on the 6th day of August, 1874, which wheat had been sold to said Smith by the defendant on the 6th

33—81st Ill.

day of August, 1874, and if they shall further believe, from the evidence, that said Smith obtained from the agent at said Bayliss station a bill of lading for said car load of wheat, and that said Smith negotiated the same to the First National Bank of Pittsfield, by drawing his draft in favor of said bank on the consignee named in said bill of lading, for the sum of $350 advanced to him thereon by said bank, and at the same time delivering to said bank said bill of lading, to be thereto attached, to secure the payment of said draft; and that such transfer of the bill of lading and advance of money thereon was made *after* said wheat was loaded into said freight car, that then said defendant had not the right to remove and take from the said car the wheat so loaded into it, although the jury may believe, from the evidence, that the wheat had been sold to said Smith, or to said Smith and Donley, with the express agreement or understanding that the same was to be paid for upon delivery, and that the same was not to be moved from the switch, where loaded, or the title thereto pass to said Smith until paid for; and the fact that the bill of lading had been given to Smith before the wheat was actually loaded into the car, would not, of itself, justify such removal of the wheat from the car by the defendant. But, on the other hand, should the jury believe, from the evidence, that said wheat, so loaded into said car, was sold by the defendant under an agreement that he was to be paid for the same upon delivery, and that the same was not to be removed from the switch until he was paid for the same; and the jury shall further find, from the evidence, that said wheat, although contracted to be sold on the 5th day of August, 1874, was not actually loaded into said car until after the bill of lading therefor had been both given and negotiated as aforesaid. that then said defendant, as against plaintiff, was justified in taking said wheat from the car upon ascertaining that said wheat would not be paid for by said Smith."

To the giving of which said instruction, the plaintiff then and there excepted.

The jury returned a verdict for defendant, and the plaintiff

thereupon moved the court for a new trial, and assigned as reasons therefor:

*First.* That the verdict was contrary to the law and evidence.

*Second.* Because of improper instructions to the jury.

The motion for a new trial was overruled by the court; to the overruling of which motion the plaintiff then and there excepted, and judgment was rendered by the court for the defendant upon the verdict.

To reverse this judgment this writ of error is brought, and the errors assigned are: That the court erred in the instruction to the jury, and, that the court erred in refusing a new trial.

We do not see that plaintiff in error has any valid ground of complaint on account of the instruction of the court or the finding of the jury. The court seems to have assumed, that depositing the wheat in the car was an apparent delivery to Smith of the wheat. This is far from being clear, from the evidence. There is no proof of any affirmative and open acts of control over this car by any one, from the time the wheat was put in the car until it was taken out. The railway company, by sending the car to this switch for Smith, to be loaded with wheat, put the car under Smith's control for that purpose. Smith, by his contract, such as is shown, put this car under the control of Gilvin, for the purpose of depositing this wheat in it, and Smith had no right to resume possession of the car before the wheat was paid for or removed from the car. If he had attempted to do so at any time while the wheat was in the car, Gilvin had the lawful right to prevent it. Gilvin was entitled to the actual control of the car during that interval. Had the railroad company attempted to remove the car, Gilvin had the lawful right, as against the railroad company, to have required that the wheat should be paid for or removed from the car before the removal of the car.

There is no proof of any acts of control or possession by any one except Gilvin, and he seems to have had the key, or at least the control, for when he chose he took the wheat out

of the car without asking the permission of any one. The car was more in the apparent possession of Gilvin than in the apparent possession of Smith. Smith was not there at all. Gilvin was, and could lawfully have retained the wheat against any one attempting to take control of it. This assumption as to the apparent possession, was surely as favorable to plaintiff as he had any ground to claim.

A man can not be divested of his property without his consent, unless he be guilty of some default or improvidence, on the faith of which others have so acted that it would be unjust to them for him to assert his title to his property.

What fault, in this case, is attributable to Gilvin? It is said that "he should have refused to deliver the wheat when he heard a rumor that Smith had absconded."

As already suggested, the wheat is not shown to have been *delivered* at all. It was placed in the car ready to be turned over to the control of Smith, or to be "delivered" when payment was made. Delivery and payment were to be contemporaneous acts. Depositing the wheat in the car, under that contract, was simply putting the wheat in a position ready for delivery.

Again, the wheat was deposited in the car on Thursday, and at that time Gilvin had heard no rumor that Smith had absconded. That rumor is not shown to have reached Gilvin until Monday. It is said he should have given express notice to the railway company at the time of putting the wheat in the car, "that such deposit must not be regarded as a delivery to Smith."

We do not think that ordinary prudence demanded such a notice, under the circumstances. So far as Gilvin had notice, or reason to suppose, the railway company had no interest in the question. He had no reason to suppose that the railway company would issue a bill of lading for wheat, of which they had not taken possession. The ordinary custom is to issue bills of lading only after the cargo has been received, or, at least, inspected by some employee of the railway company.

Had Gilvin permitted the employees of the railway company to take control of the wheat, without such notice, it would be

otherwise; but no agent or employee appeared for any such purpose. Ordinary care did not demand that Gilvin should send a messenger four miles to notify the railway company of his claim. It would be time enough for that when some of the railway men came upon the ground. "For five days," it is said, Gilvin "allowed the wheat to remain in the custody and at the risk of the railway company." This is a mistake. Under the facts, it was in the custody (although possibly not at the risk) of Gilvin.

It is said that if complaint or notice had been given, the railway company might have pursued Smith. Gilvin had no knowledge that Smith had cheated the railway company, and therefore owed no duty in this respect.

When one of two innocent persons must suffer by the knavery of a third, the party who trusted the knave must be the sufferer. It was gross negligence in the railway company to issue to Smith a bill of lading for grain without first having the possession and control of the grain. The loss sprang from this negligence, and not from any default of defendant.

It is conceded that, between Gilvin and Smith, Gilvin had the lawful right to remove the wheat for non-payment. Having exercised this right without any notice of the claims of plaintiff, he can not thereby be put in fault.

There are some cases where the true owner of property is estopped, as against third parties, from asserting his title to the property,—in cases where, by the consent or acquiescence of the real owner, the property is permitted to be in such situation, that a stranger has a right to assume that the title is in another, and does so assume, and, on *the faith of such indicia* of ownership in the apparent owner, invests money or property, or assumes some liability.

In this case, neither the railway company nor the bank acted on *the faith* of the supposed *indicia* of ownership in Smith, for they acted before the *indicia* existed. Under the facts, as conceded by the plaintiff in error, there was no cause of action.

The judgment must be affirmed.

*Judgment affirmed.*

Upon a petition for a rehearing, Mr. Justice Dickey delivered the following additional opinion:

This case was decided as of the January term, 1876. The opinion was filed June 30th, 1876. The facts of the case are stated in that opinion. The petition for rehearing calls in question the position (taken in the opinion) that, when the wheat in question was placed in the car, and so long as it remained in the car, the car and wheat *were in the possession and control of Gilvin*, and not in the possession of either Smith or the railroad company; and it is insisted that, in the case of *The Illinois Central Railroad Co.* v. *Smyser et al.* 38 Ill. 354, "upon a state of facts the same as in this case," this court held that the property in question was in the possession, custody and control of the railroad company. While the cases are alike in some of their features, they are unlike in one very important feature. In that case, as the court, in the opinion, said, "the company, after the car was loaded, had the unquestioned right to remove it to any other part of their road." In this case the company had no such right. The cotton, in that case, was placed in the car by the owner thereof, to be shipped unconditionally on account of the owner. The consent by the owner of the cotton, that the same should be at once removed by the railroad company, was complete and unconditional. This consent, as the court held in that case, was to be inferred from the facts. Nothing remained to be done before the railroad company might rightfully proceed to move the same. The cotton was in the custody of the railroad company for the owner. The invoice of the goods loaded had been rendered by the owner to the railroad company. Nothing remained to be done, save the making of the bill of lading, and that was a duty to be performed by the railroad company, and was not a condition precedent to be performed before the taking of the custody of the property by the railroad company.

In the case at bar, it was otherwise. The wheat was put on the car, to be dealt with as Smith might direct, upon payment

of the contract price of the wheat, but not until then. The wheat was not placed under the unconditional control of the railroad company by Gilvin. The delivery was not complete, for Gilvin did not intend, by placing the wheat in the car, to surrender the control thereof until payment was made, and did no act from which it could properly be inferred that he so intended.

The words of an opinion must be read in the light of the facts of the case under discussion. The opinion in 38 Ill. *supra*, when thus read, is in no degree incompatible with the ruling of this court in this case. Were we, however, to assume, in this case, that this car, and the wheat, when loaded in it, were, in contemplation of law, in the custody and possession of the railroad company, it could not profit the petitioner. It would simply show that the railroad company was in possession of wheat, the right of possession of which was in Gilvin. Even if Gilvin had parted with his possession under a contract which required payment to be made concurrently with the delivery, he had the right to resume the possession if the payment was not made. The possession of the railroad company, in such case, would be possession for the use of the true owner. Gilvin, if the wheat be regarded as delivered, delivered the same to the railroad company, not as the absolute property of Smith, but as property agreed to be sold to Smith, to be paid for on delivery, and subject to be retaken by Gilvin, if not paid for. It was Gilvin who put the wheat upon the cars, and not Smith. The apparent property, without explanation, was that of Gilvin, and not that of Smith. The mere fact that *Gilvin* placed the wheat upon the car of the railroad company, did not hold out to the railroad company the idea that Smith had any interest in the property. To show any right of property in Smith, or in the railroad company, (a claimant under Smith,) resort must be had to the contract of sale by Gilvin to Smith. When resort is thus had, it turns out that, for want of payment, Gilvin still had the right of possession, and that Smith's rights are subject to this right of possession, and Smith was not the absolute owner.

If the railroad company acquired, by giving the bill of lading and by receiving the wheat, any right to the wheat, it acquired only such right as Smith had—it acquired no more. That right, if any, was subject to Gilvin's right so resume possession of the wheat upon failure of payment of the contract price, which was to be made upon delivery. *Bloxom* v. *Sanders*, Eng. C. L. 872, *Bloxom* v. *Morley*, same volume, and *Wilmshurst* v. *Bowker*, 5 Bingham's New Cases, 541.

Under the other facts in this case, we do not think the rights of Gilvin to resume this possession would have been injuriously affected if the bill of lading had been issued during the period while the wheat was in the car. Smith, by taking the bill of lading, could only give to the railroad company such title as he had. Gilvin, as against the company, must be allowed to assert his full rights as against Smith (under whom the company holds), unless he has done some act upon which the railroad company had a right to rely, and by which it was in fact misled, and on the faith of which it had changed its condition, or unless he has failed to do some act which his duty required him to do for their protection. This he has not done.

If the railroad company was in possession, its possession was that of bailee, for whomsoever it might concern. Gilvin knew nothing of the bill of lading, and, apparently, the railroad company had no interest in the question of ownership, or in any question as to the relative rights of himself and Smith. He had no reason to apprehend that the railroad company would assume, from the mere fact that he placed the wheat upon the cars, that Smith was the absolute owner of the wheat.

Where a man places his wheat in a railroad car, without the knowledge of the railroad company, and a stranger coming along represents that the wheat is his, and that he placed it there, and procures a bill of lading therefor, the railroad company, in such case, could claim no rights against the true owner, unless he had done some act by which the company was misled, and on which it had a right to rely.

In this case, however, the bill of lading was issued and nego-

tiated before the wheat was placed in the car. The railroad company did not, after the wheat was put in the car, incur any new liability, or in any way change its condition, by reason of the act of Gilvin in placing the wheat in the car. Gilvin can not, therefore, be estopped from asserting, as against the railroad company, his rights, as fully as he might assert them against Smith. In no view of the case can this action be sustained.

The application for rehearing must be denied.