DENNIS E. SIBLEY *et al.*

*v.*

MARTIN TIE *et al.*

1. SALE—*without notice of claim of another*. If a party sells and delivers corn to another, taking a contract that the purchaser is to have no claim on the same until it is paid for, and the purchaser sells and delivers the same to a third person, who has no notice of the contract, the latter will hold the corn as against the original vendor, but not if his purchase is fraudulent.

2. SAME—*what is not a delivery*. Where a purchaser of corn gave to the vendor a writing that he held no claim on the same until it was paid for at a specified price, and the vendor commenced hauling and putting the corn in the purchaser's cribs, on the faith of the writing, and, before all was so put in the cribs, the purchaser sold the same to another, and attempted to deliver possession to his agent, it was *held*, that no title passed by the last sale, for want of delivery by the first vendor. Putting the corn in the purchaser's cribs, under such circumstances, was *held*, no delivery as to any part, but only a preparation to deliver when all was hauled and paid for.

3. FRAUD—*in purchase of grain*. Where the proof showed that a party claiming to have purchased a lot of corn had not seen it before the alleged purchase, and had not met the seller and contracted with him, and had no knowledge of the sale to him until he received a sale bill by mail, duly acknowledged and recorded, and the purchaser claimed to have satisfied a note on the seller, and afterwards paid the balance of the price in currency, and the seller, in a few days after the alleged sale, went into bankruptcy, it was *held*, that the jury were justified in holding the sale was not in good faith, as against others having a claim on the same.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. HUTCHINSON & HINDS, for the appellants.

Mr. OSCAR A. DE LEUW, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of replevin, brought by appellants, to recover a quantity of corn from Martin Tie and others, which appellants claimed to have bought of Green & Bro. A trial of the cause before a jury resulted in a verdict and judgment

in favor of the defendants, which appellants claim is not sustained by the evidence, and, upon this ground mainly, they urge a reversal of the judgment.

It appears, from the evidence, that Green & Bro. were dealing in grain at Ashland, and the corn in question was bought by them of the defendants, ten farmers, residing in that neighborhood. Green & Bro. owned two cribs on the railroad grounds at Ashland. The corn was to be hauled by the several owners, weighed and placed in their cribs, and, upon delivery, it was to be paid for, at 35 cents per bushel, the quantity purchased amounting to about 14,000 bushels.

Upon making the purchase, for the protection of the defendants, Green & Bro. executed and delivered to them a contract, in writing, as follows:

"This is to certify that Green & Bro. hold no claim on corn delivered in Ashland and put in cribs by Martin Tie, Pat Butler and others (naming them), till said corn is paid for at 35 cents per bushel, as per contract of even date with this.

CHARLES GREEN & BRO."

On the 27th day of January, Green & Bro. executed a bill of sale to appellants, who were commission merchants in Chicago, for 7000 bushels of corn, in crib No. 2 on railroad grounds at Ashland, and a like bill of sale for crib No. 1, containing 7000 bushels. These documents were acknowledged and recorded, and mailed to appellants, at Chicago. The sale bills were accompanied with a certificate of one Murdock, station agent at Tallula, that the cribs contained the quantity of corn mentioned in bills of sale. On the same day the sale bills were executed, Green and Murdock went to Ashland, examined the corn, and, it is claimed, possession was delivered to Murdock, as agent of appellants. On Saturday, the 10th day of February, one of the appellants went to Ashland, and marked the name of "Sibley & Perry" on each crib, and placed a man in charge of the corn, who, it appears, watched the corn during the day and portions of the night

until the following Monday, when appellees came with teams and removed the corn.

If the corn in question was delivered to Green & Bro. by the defendants, and if appellants purchased of Green & Bro., in good faith, without notice of the contract under which the corn had been purchased by Green & Bro., then they ought to have recovered. But was there a delivery of the corn to Green & Bro.? It is apparent, from the evidence, that there was no intention on the part of defendants to part with their property until they should be paid. The corn was to be paid for on delivery. The contract under which the purchase was made, gave the defendants the entire possession of, and dominion over, the property until Green & Bro. should pay the purchase price. This they never relinquished. It is true, the cribs were owned by Green & Bro., but this fact did not give them possession of the corn. The cribs were, in effect, transferred to the custody of the defendants; they held the control of them for a specified purpose. From day to day they placed their corn therein, guarded and protected it, and on the day the bills of sale were executed, the defendants were still delivering their corn in the cribs, a large quantity of which had not then been delivered; and at the earliest notice the defendants had that appellants were setting up a claim to the property, the latter were notified that Green & Bro. did not own the corn. Suppose Green & Bro. had purchased of defendants a quantity of corn, for future delivery, and had furnished sacks in which the corn was to be placed, instead of cribs, at Ashland, it would not, we apprehend, be contended, the moment the corn was sacked the title passed; and yet no substantial difference is perceived between the supposed case and the one under consideration.

The only reasonable construction that can be placed upon the evidence is, that there was no delivery of the corn. It was placed in the cribs, from day to day, as it could be hauled from the farms, ready to be delivered when it should all be hauled in. As was held in *Toledo, Wabash and Western Rail-*

*way Co.* v. *Gilvin,* 81 Ill. 511, the corn was merely placed in a position ready for delivery. At the time, therefore, that Green & Bro. attempted to sell the property to appellants, one important element remained to be done in order to invest them with the title to the corn. It had not been delivered to them, and they could not pass the title to appellants by the alleged sale to them. The written contract between Green & Bro. and the defendants in express language declared that Green & Bro. held no claim on the corn until it should be paid for, at a specified price per bushel. Nothing in the contract or the acts of the parties indicates a delivery of the property. The fact that Green, and Murdock, who claimed to be an agent of appellants, examined the corn on the day the sale bills were executed, is of no importance. The corn was not then in the possession of Green, and he could not deliver it to Murdock or any other person.

But, on the other branch of the case,—the good faith of the purchase,—the verdict of the jury may be sustained. The facts in evidence in regard to the purchase were not of a character calculated to convince a jury that appellants purchased the corn in good faith. Appellants did not see the corn before the alleged purchase, nor did they meet Green & Bro. and contract with them, nor did they have any knowledge that Green & Bro. had sold them the corn, until they received the two sale bills, by mail, at Chicago.

It is generally understood that it takes two persons, at least, to make a bargain; but here, the contract seems to have been made by one. Again, the manner in which appellants claim to have paid for the corn was not satisfactory. The money was not paid, but appellants claim, on receipt of the bills of sale, they paid a note they held against Green & Bro. of $3500, and the balance, they say, was paid in currency. Another remarkable feature in regard to the transaction is, that a few days after it occurred, Chas. Green, the principal actor in the matter, went into bankruptcy.

The facts in evidence before the jury were not calculated to

inspire them with much confidence in the honesty and good faith of the purchase, but, rather, had a tendency to establish the fact that an attempt was made to procure the corn of the defendants, and place it into other hands, and let them get their pay as best they could.

At all events, the good faith of the purchase was a question of fact for the jury, and they have found against appellants, after having been properly instructed.

We perceive no ground to disturb the judgment, and it will be affirmed.

*Judgment affirmed.*