## WILLIS STONE, use, etc.

### V.

## WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY.

1. BILL OF LADING—ASSIGNMENT.—While a bill of lading is not a negotiable instrument in the sense in which a bill of exchange or promissory note is negotiable, yet as the representative of a valuable commodity, it is assignable to the party entitled to control the possession of such commodity to the same extent and for the same purposes as the property itself would be; and

innocent holders thereof for value, ought to receive the same protection as if they held possession of the property itself.

2.  COMMON CARRIER—WRONGFUL DELIVERY OF BILL OF LADING.—In an action against a common carrier for goods received by it and delivery of a bill of lading to a consignor who was not the owner of the goods nor en-titled to possession until the property was paid for, it does not matter that the carrier had no notice of such agreement between the owner and consignor, as it only succeeded to such rights of possession as the consignor had, and l being but a bailee, the carrier was in possession for whomsoever it might concern.

3.  As a general rule, bills of lading issued for property not yet on board, are void.

ERROR to the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.    Opinion filed June 21, 1881.

Mr. WILLIAM A. DAY, for plaintiff in error; that a bill of lading is open to explanation or contradiction by parol, cited Bissel, v. Price, 16 Ill. 408; Grant v. Norway, 10 C. B. 665.

If goods be taken from a carrier by process of law, he is relieved from delivering the same according to the bill of lading, Story on Bailments, § 120; Stiles v. Davis, 1 Black. 101·

Bills of lading are not negotiable: B. & O. Ry. Co. v. Wilkins, 44 Md. 11; Thompson v. Dominy, 14 Mees. W. 403.

Generally upon the right to recover where delivery has been made to the wrong party by the carrier: Bassitt v. Spofford 45 N. Y. 388; Freeman v. Buckingham, 18 How. 182; Saltus v. Everett, 20 Wend. 268; T. W. & W. Ry. Co. v. Gilvin, 81 Ill. 511.

Where delivery and payment are to be concurrent acts, title does not pass until payment: Ward v. Shaw, 7 Wend. 404; Hoffman v. Culver, 7 Bradwell, 450.

In the absence of property and authority, a sale of chattels confers no title: Luckey v. McDermott, 8 S. R. 500; Williams v. Merle, 11 Wend. 80; Guereirs v. Peile, 3 B. Ald. 610; Williams v. Barton, 3 Bing. 9; McCombin v. Davis, 6 East, 538; Shaw v. Stone, 1 Cush. 228; Odiome v. Maxey, 13 Mass. 178; Newbold v. Wright, 4 Rawle 195.

Mr. J. S. LOTHROP, for defendant in error.

McCULLOCH, J.   This was an action of replevin commenced on the 29th day of October, 1880, by Willis Stone, as agent of one Edward Bailey, to recover possession of one car load of baled hay in a car on the track of defendant in error in Tolono. The suit was commenced before a justice of the peace, who issued his writ of replevin to a constable; the plaintiff gave the usual bond, the writ was served by copy on the same day it was issued, but the officer being unable to find the property, made return of the writ accordingly.   On the return day of the writ the parties appeared before the justice, whereupon the plaintiff demanded judgment for the value of the hay as in an action of trover, and a trial being had, judgment was rendered for the plaintiff for the sum of $62.50, from which judgment the defendant appealed. . On the trial in the circuit court the cause was submitted to the court (a trial by jury being waived) upon the following agreed state of facts:

"Edward Bailey, of Champaign, Illinois, was possessed of a farm near Tolono, upon which was a large quantity of hay in stacks.   That Willis Stone was Bailey's agent at Tolono, controlling and operating said farm for Bailey.

"That Bailey agreed with one Ledger, a transient party, to sell Ledger said hay at the rate of $6.25 per ton, to be paid for when each car was loaded; but it was expressly stipulated that Stone, as the agent of Bailey, should continue in the control and possession thereof until said hay was paid for; and in the event of Ledger failing to pay for each car load of said hay when a car was loaded, then the hay was to be shipped by Stone in his own name; that Stone was not to part with the possession of said hay until it was paid for.   But no notice of the above arrangement was given to the defendant, nor to any of its agents, and it had no notice thereof.

"The car load in controversy contained about ten tons, was partly loaded in the car October 28, 1880; about four o'clock of that day the agent of the Wabash, St. Louis & Pacific railway company issued and delivered to said Ledger a bill of lading for said car (a copy of which is attached to the papers). That the balance of said car load was loaded in said car the next morning between the hours of nine and ten o'clock.

"Ledger furnished the hay press and hands, and teams to press said hay, and pressed and baled by Ledger on Bailey's farm.   Ledger's hands hauled the hay to the scales, and there weighed by W. H. Morgan at request of Stone, and tickets taken in Stone's name; and under the charge of Stone and by said hands of Ledger thence taken to the car and loaded.

"But no notice was given to defendant of the manner of weighing, nor that Bailey or Stone had any interest in it until the demand hereafter mentioned.

"That several car loads of hay had been pressed, weighed, loaded and shipped in this manner by Ledger, but that Ledger had paid Stone for each of said cars when loaded, and in each instance a bill of lading was issued to Ledger in name of E. M. Everdeen & Co., and consigned to Elmendorf & Co., Chicago, and bill of lading so issued by defendant was taken by Ledger to R. A. Bower, banker, and with drafts upon consignee transferred to Bower who paid Ledger the cash value for the same,

"That as soon as the carload in controversy was loaded, Stone demanded of Ledger the pay for said load of hay, but Ledger evaded him, went off and did not return; said Stone then immediately and while said car of hay was on the track at Tolono, made a demand on the agent of said defendant at Tolono for the return of said hay to him, but the agent refused to let him have it.   Stone then went to the office of Esquire Colvin, J. P., and commenced this replevin suit; that the writ of replevin was returned by J. A. Davidson, constable, with his endorsement that the goods were not found by him.

"That neither said Bailey or said Stone knew of the issuing of said bill of lading to Ledger.

"That Ledger, upon receipt of said bill of lading, drew a draft for the sum of $65 in favor of R. A. Bower, and delivered said draft and bill of lading to R. A. Bower, of Tolono (said draft was pinned to the bill of lading), who paid him upon the same the sum of $65.   The bill of lading was not assigned or indorsed, but was attached to the draft in the usual way.

"That the bill of lading, with draft, was on the night of October 28, 1880, sent to Chicago by Bower, he having no knowledge of any controversy in regard to the matter.

" The agent of the defendant supposed, at the time the bill of lading was issued, that the car was fully loaded."

The bill of lading referred to in the foregoing stipulation is dated October 28th, 1880, and recites the receipt from S. D. C. Hays & Co., of the hay in question, consigned to Elmendorf & Co., Chicago, Illinois, signed by the agent at Tolono.

On the trial in the circuit court judgment was rendered in favor of defendant, to which the plaintiff excepted and now brings the record to this court and asks for a reversal, on the ground that the facts so agreed upon entitled him to a judgment.

Were it not for the alleged rights acquired by Bower, the banker who cashed the draft drawn upon the faith of the bill of lading, there could be little controversy about this case. By the contract between Bailey and Ledger for the sale of the hay, payment was to be made by the latter when each car was loaded, and until such payment was made, Stone, as the agent of Bailey, was to continue in the control and possession of the hay. Ledger never had the right of possession of the hay in controversy, as against the right of possession residing in Stone, for the reason the hay was not paid for. The fact that the railway company had no notice of the arrangement between Bailey and Ledger as to Stone's agency in the matter, or his right of control over the property until paid for, cannot affect plaintiff's right to recover, for the company only succeeded to the right of possession of Ledger, whatever that might prove to be, and being but a bailee, it was in possession, " for whomsoever it might concern." T. W. & W. Ry. Co. v. Gilvin, 81 Ill., 511.

Even if Stone had parted with the possession and Ledger had been permitted to load the hay on defendant's car, yet, upon his failure to pay, Stone would have had the right to resume the possession, and, in the absence of the intervening rights of other innocent parties, might have successfully maintained his right as against the defendant. We do not consider these propositions to be seriously controverted by counsel for defendant.

But it is contended, on behalf of the defendant, that Stone

had so far held out Ledger as the owner of and in possession of the hay as to authorize innocent third parties to deal with him as such; that when Ledger was permitted, by Stone, to load the hay upon defendant's cars, without notice of his right of possession until the same was paid for, defendant acquired the right to issue a bill of lading to Ledger; that when the banker found Ledger clothed with this evidence of ownership he had the right to deal with him as the owner of the hay, and to receive the bill of lading as a symbolical delivery of the hay itself as a pledge that the consignee would pay the draft drawn by Ledger; that defendant having issued the bill of lading without any notice of plaintiff's right of possession, and Bower, without any such notice, having cashed the draft and having taken the bill of lading as security for its payment by the consignee, the title to as well as the possession of the property became vested in Bower; that defendant became the bailee of Bower and was thenceforward answerable to him and not to Ledger or Stone, for which reason it is contended that Stone cannot recover in this action.

It is not to be denied that bills of lading occupy a very important place in the commercial world. For the time being they stand in the place of the property they cover and may be treated as its representative. When the right of possession is changed by a sale or pledge of the property itself, the transfer of the bill of lading operates as a change of possession of the property, the carrier in the meantime being the custodian for the real owner or party in interest. While a bill of lading is not a negotiable instrument in the sense in which a bill of exchange or promissory note is negotiable, yet as the representative of a valuable commodity it is assignable to the party entitled to control the possession of that commodity, to the same extent and for the same purposes as the property itself would be if corporeally present. Inasmuch, therefore, as these instruments are capable of performing very important functions in commercial transactions, innocent holders thereof for value ought to receive the same protection as if they held possession of the property itself.

But every person purchasing property or receiving a pledge

of the same upon the faith of a bill of lading is bound to depend very largely upon the good faith of the party with whom he deals. Unless otherwise provided the bill of lading is evidence of title in the consignee, and, unless notified to the contrary, the carrier may deliver to the consignee without its production. Hutchison on Carriers Sec. 130.

Such was the case in the present instance. The receipt ran in the name of S. D. C. Hays & Co., of which firm we may presume Ledger was a member, but the consignment was to Elmendorf & Co., at Chicago. When Bower cashed the draft of Ledger on the latter firm he must have satisfied himself from evidence *dehors* the bill of lading, that Ledger had authority to draw for the value of the hay, for certainly the bill of lading conveyed no such authority on its face. It purported to be nothing more than a receipt to S. D. C. Hays & Co. for certain hay presumed to belong to Elmendorf & Co., and a contract by defendant to carry the same to him upon certain specified conditions. What authority had Ledger to obtain advancements from Bower on hay consigned to Elmendorf & Co.? For a satisfactory answer to this question Bower must have trusted to either Elmendorf & Co. or to Ledger. So in regard to the fact of the shipment, Bower did not go on each occasion to the railroad to see that the car was actually loaded. He took the signature of the defendant's agent to the bill of lading together with Ledger's representations as sufficient evidence of that fact. So it is evident that Bower, as is likely to be the case in a large majority of instances, trusted the good faith of the parties with whom he was dealing. What his remedies may be against them it does not now concern us. The question at issue in this case is to what extent *plaintiff* is bound by the acts of Ledger.

That a gross fraud has been perpetrated by Ledger is but too apparent. If one of two innocent parties must suffer therefrom, the rule is that "He who trusted the knave must be the sufferer." T. W. & W. Ry. Co. v. Gilvin, *supra*. On behalf of defendant it is argued that by putting the hay under control of Ledger at the stack, by allowing his hands to press the hay and his teams to haul it to the cars, and his men to load it, and

by allowing him to procure bills of lading from day to day without giving notice of his right of possession, plaintiff held Ledger out to the world as the owner of the hay, and having trusted him with the same as the owner thereof, plaintiff ought not now to be allowed to claim it as against innocent holders for value.

The facts set out in the agreement are briefly these: Stone was to remain in possession until the hay was paid for; each car load was to be paid for when loaded; in case Ledger failed to pay in this manner the hay was to be shipped in Stone's name; Ledger furnished the hay press and teams and pressed the hay on Bailey's farm; his hands hauled the hay to the scales, where it was weighed at Stone's request, tickets were taken in Stone's name, and then under the charge of Stone, but by the hands of Ledger; the hay was taken to the car and loaded. Several car loads had been pressed, weighed, loaded and shipped in this manner by Ledger, who had paid Stone for each car load when loaded, and in each instance Ledger had received the bill of lading consigned to Elmendorf & Co., upon whom Ledger had drawn drafts which had been cashed by Bower, the bills of lading being therewith transferred to him. As soon as the car in controversy was loaded Stone demanded pay therefor from Ledger, who went off and did not return, whereupon plaintiff immediately, and while the hay was on the track at Tolono, made a demand therefor of defendant's agent, who refused to let him have it.

As we have before had occasion to remark, there was nothing in this whole transaction to prevent plaintiff's asserting his right to the property in controversy as against defendant, unless the rights of some innocent holder of the bill of lading for value had intervened. Stone asserted this right of his at the very first moment he could have done so under the contract. As soon as the hay was loaded, and before it had passed beyond his control, he had a right to demand his pay, and in case it was not forthcoming he had a right to have it shipped in his own name. As between himself and Stone, Ledger had no right to a bill of lading until the hay was paid for. Stone made demand in due time, so as to save his right to have the hay ship-

ped in his own name, that is, after it was loaded and before any bill of lading was or could have been procured *after loading.*

It is argued, however, that the bill of lading was issued before the loading was completed, and that this course was justified by the previous course of conduct between the parties. Here, however, the evidence fails to sustain defendant's position. There is no evidence whatever that any previous bill of lading had been issued to Ledger before the car represented by it was fully loaded and the contents paid for, or that Stone ever was apprised of any such irregular transaction, nor was he aware of the issuing of the bill of lading in this particular case.

We cannot see that Stone has been guilty of any negligence whatever in trusting Ledger with the property in question. In fact he would not trust him for anything. On the other hand, defendant's agent trusted Ledger's statement that the car was fully loaded when it was not. Had this agent seen to it that the car was loaded before issuing the bill of lading, Ledger would have been powerless to perpetrate the fraud upon Bower. As to plaintiff, the bill of lading was fictitious when issued, and its transfer could confer upon Bower no rights to plaintiff's property. The fault lay wholly with defendant's agent in issuing it. As a general rule such instruments are void. Hutchison on Carriers, Secs. 122, 123; 7 Ad. & E. 29; 18 Howard, 182. Stone retained his control over the property up to the very time when a valid bill of lading could have first issued and then, upon Ledger's failure to perform his part of the contract, asserted his right to the hay. We see nothing in his conduct or in any of the circumstances attending the transaction whereby he ought now to be estopped from claiming his property. As the matter now stands, the property has gone forward, its proceeds have or can be applied to the payment of the draft cashed by Bower, and in this manner the wrong done him can be repaired, while the loss can properly be made to fall upon defendant, whose agent seems to have been the only party through whose fault Ledger was enabled to perpetrate the fraud. The judgment of the court below will be reversed and the cause remanded for further proceedings, in conformity with this opinion.

Reversed and remanded.