## Bank of Antigo v. Union Trust Company.

1. CONTRACTS—*Rescission in Toto.*—The general rule unquestionably is, that where a contract is an entire one, it can not be affirmed in part and rescinded in part ; in such a case the contract must be rescinded *in toto*, or not at all.

2. BANKS AND BANKING—*Right to Rescind Discount for Fraud.*—W. & Co. sent a note of H. & M. to the U. T. Co. for discount. H. & M. were insolvent and their condition was known to W. & Co. It appeared from the evidence that W. & Co. made false and fraudulent representations concerning the note and the U. T. Co. relied on such representations in making the discount. *It was held*, upon the discovery of the insolvency of H. & M., that the U. T. Co. had the right to rescind the discount of the note, and charge back to W. & Co. the amount which it had credited to W. & Co. on account of said note.

3. CHECKS—*Effect of Drawing.*—The effect of drawing a check upon money deposited in a bank and delivering it to a person is to assign to the person receiving it, so much of the drawer's funds on deposit, as the check calls for, and if, when presented, the drawer has funds on deposit in the bank sufficient to pay it, the bank is bound to pay it.

4. CHECKS—*Rights of Drawees.*—The rights of a drawee are not fixed until the presentation of the check for payment. If before presentation the drawer's funds on deposit have become exhausted by the payment of other checks, the bank is not bound to pay it.

5. BANKS AND BANKING—*Contract Between a Bank and its Depositors.*— The contract between a banker and depositor, arising out of universal custom, is that the banker will pay out the money deposited, on the presentation of the depositor's checks against it, in such sums as the checks may specify, in the order of their presentation, and the holder of such check becomes, as against the bank on which it is drawn, in case the drawee shall at that time have on hand the amount specified in the check, entitled to payment when the check is presented, but not before.

6. BANKS AND BANKING—*Liability of the Bank to the Holder of a Check.*—Whatever the liability of a banker to the holder of a check drawn against a deposit may be under some supposable conditions, he is not bound to pay a check before presentation, nor unless, when presented, he has on hand sufficient of the drawer's money to pay it.

7. BANKS AND BANKING—*Rights of Check Holders.*—A bank having discounted some notes held by a person not the maker, placed to the credit of said person the proceeds of the same as a fund on deposit. It paid several checks drawn on the fund, when the makers of the notes failed. The bank deducted the amount of the remaining note less the discount from the fund on deposit, and returned it to the person for whom it was discounted; afterward a check drawn by said person before said deduction was made, was presented to the bank and payment refused. *It was held,* that the drawee of the check acquired no rights against the bank that prevented it from making the deduction. The payment of the check was rightfully refused, not only as against the drawers but as against the holders.

8. INNOCENT PARTIES—*Which Should Suffer.*—Where one of two innocent parties must suffer a loss, the one by whose fault the loss occurred must endure it.

Memorandum.—Assumpsit. In the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Declaration, special count on check with common counts; plea, general issue; affidavit of merits; trial by jury; verdict and judgment for defendant; plaintiff appeals. Heard in this court at the March term, 1893, and affirmed. Opinion filed April 28, 1893.

The opinion states the case.

APPELLANT'S BRIEF, FLOWER, SMITH & MUSGRAVE, ATTORNEYS.

One can not rescind a contract and at the same time retain the consideration in whole or in part which he has

received under it. He must rescind the contract *in toto*, or not at all. Harzfeld v. Converse, 105 Ill. 534; Converse v. Harzfeld, 11 Brad. 173; Jennings v. Gage, 13 Ill. 610; Bowen v. Schuler, 41 Ill. 192; Lovingston v. Short, 77 Ill. 587; Kellogg v. Turpie, 93 Ill. 265.

Even where a party defrauded may rescind as against the defrauding party, yet the rights of innocent third persons acquired for value can not be affected thereby. If such rights have attached, it is too late to rescind. Bishop on Contracts, Sec. 679.

Wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. Lickbarrow v. Mason, 2 T. R. 63; Rawls v. Deshler, 42 N. Y. 572; Toledo, W. & W. R. R. Co. v. Gilvin, 81 Ill. 511; Jennings v. Gage, 13 Ill. 610; Bishop on Contracts, Secs. 672–3–4.

A check is a negotiable instrument, and subject to the same principles which govern ordinary bills of exchange in respect to the rights of the holder. Bull v. Bank of Kasson, 123 U. S. 105; 2 Daniel on Negotiable Instruments, Sec. 1652.

A bank check transfers the money of the drawer in the bank to the payee the moment the check is delivered and from that moment it ceases to be the property of the drawer and belongs to the payee or his assignee. Munn v. Burch, 25 Ill. 35; Chicago M. & F. Ins. Co. v. Stanford, 28 Ill. 168; Marine Bank of Chicago v. Ogden, 29 Ill. 248; Bickford v. First Nat. Bk., 42 Ill. 238; Brown v. Leckie, 43 Ill. 497; Fourth Nat. Bk. v. City Nat. Bk., 68 Ill. 398; Union Nat. Bk. v. Oceana Co. Bk., 80 Ill. 212; Ridgely Bk. v. Patton, 109 Ill. 479; Nat. Bk. of Am. v. Indiana Banking Co., 114 Ill. 483; Shaffner v. Edgerton, 13 Brad. 132; Merchants Nat. Bk. v. Ritzinger, 20 Brad. 27; McAllister v. Oberne, 42 Ill. App. 287.

A bank can not set off against a check-holder a claim against the drawer, its depositor, which is not due, or which is contingent. Fourth Nat. Bk. v. City Nat. Bk., 68 Ill. 398; Bank v. Ritzinger, 20 Ill. App. 27; Bank v. Proctor, 98 Ill. 558; Nat. Bk. of Am. v. Indiana Banking Co., 114 Ill. 483.

In determining when a credit was given by the bank to its depositor, the time of the entry on the bank books is not conclusive, but all the facts and circumstances in reference to the acceptance of the deposit should be considered. American Ex. Bank v. Gregg, 138 Ill. 596; American Ex. Bank v. Chicago Nat. Bank, 27 Ill. App. 538.

The admissions or declarations of a maker of a check after the delivery of the same, are not competent evidence against the payee, to show that the credit or deposit against which the check was drawn, was obtained fraudulently, or under such circumstances as to give the drawee bank a right to refuse payment of the check.  Smith v. Bangs, 15 Ill. 399; Wheeler v. McCorristen, 24 Ill. 40; Hessing v. McCloskey, 37 Ill. 341; Miner v. Phillips, 42 Ill. 123; Bunker v. Green, 48 Ill. 243; Randegger v. Ehrhardt, 51 Ill. 101; Bell v. Prewitt, 62 Ill. 361; Root v. Cook, 81 Ill. 260; Thorp v. Goewey, 85 Ill. 611; Bennett v. Stout, 98 Ill. 47; Brower v. Callender, 105 Ill. 88; Sawyer v. Bradshaw, 125 Ill. 440; Marine Bank v. Ogden, 29 Ill. 248.

APPELLEE'S BRIEF, A. W. GREEN, ATTORNEY.

Appellee contended that a person making a deposit of funds in a bank becomes a creditor of the bank to the extent of the funds deposited.  When he draws a check in favor of a third person upon the bank, as between the drawer and the payee, there is an equitable assignment of the funds in the bank to the amount of the check.  No relations, however, are yet created between the bank and the payee; but when the check is presented to the bank for payment, then if there are funds to the credit of the drawer sufficient to pay the check, the bank is bound to pay it.  Citing Daniel on Negotiable Instruments, Sec. 1638; Munn v. Burch, 25 Ill. 35; Fourth Nat. Bk. of Chicago v. City Nat. Bk. of Grand Rapids, 68 Ill. 398; Marine Bank v. Ogden, 29 Ill. 248; Nat. Bk. of America v. Indiana Banking Co., 114 Ill. 483; Myers v. Union National Bank, 27 Ill. App. 254; Union National Bank v. Oceana County Bank, 80 Ill. 212; Shaffner v. Edgerton, 13 Brad. 132.

OPINION OF THE COURT, SHEPARD, J.

In 1890, the firm of A. Weed & Co. were lumber dealers in Wisconsin, and in the latter part of August of that year, made representations to the appellee, a banking corporation doing business in Chicago, whereby the latter was induced to discount for them, a few days later, three notes made by the firm of Hoxie & Mellor, of Wisconsin, for the sums of $3,000, $3,000 and $5,430, respectively.

The notes mentioned were discounted by appellee on September 3, 1890, and proceeds, $11,349.65, credited to the account of Weed & Co., and the latter duly notified thereof by letter of that date.

Weed & Co. had for some time previous kept a bank account with appellee, and had to their credit on the books of appellee a balance of $809.28 on the morning of September 2d. The next, and only thereafter, credit to Weed & Co., entered upon the books of appellee, was that of the proceeds of the three discounted notes.

From the sum of these credits appellee deducted certain checks of Weed & Co., which were paid on September 2d and 3d, and at the close of business hours on September 3d, the account showed a credit balance of $5,489.08 to Weed & Co.

Appellee learned late on September 3d, that the firm of Hoxie & Mellor had failed, and on the next morning, September 4th, charged back on Weed & Co.'s account, the sum of $5,344.31, the same being the face of the note for $5,430, less the discount, charged the day before, of $85.69, and sent the following letter to Weed & Co.:

"CHICAGO, September 4th, 1890.
Messrs. A. Weed & Co., Ashland, Wis.

DEAR SIRS: Upon being informed yesterday that Messrs. Hoxie & Mellor had failed, we deducted the amount of the note of $5,430 less discount, $85.69—$5,344.31, from your account, and herewith return the note.

Yours respectfully,
G. M. WILSON, Cashier."

With this amount of $5,344.31 charged back against the

account of Weed & Company, there remained to the credit of the latter on appellee's book, at the time when the check hereinafter mentioned was presented for payment, on September 4th, only the small balance of $144.77.

In the meantime, between the sending of the notes by Weed & Co., to appellee for discount, on August 31st, and the actual discount of the notes on September 3d, Weed & Co. had given to appellant, the Bank of Antigo, a check of which the following is a copy:

"Chicago, September 2, 1890.

The Union Trust Company :   Pay to the order of Amos Baum, Cashier, three thousand dollars.

A. Weed & Co."

The payee named in the check was the cashier of appellant, a bank doing business in Antigo, Wisconsin.

The check was given to appellant in payment of a note of Hoxie & Mellor for $3,000, on which Weed & Co. were liable as indorsers, and which was owned by appellee and had been sent by appellee to appellant for collection. Instead of remitting the check to appellee, the appellant treated it as cash and remitted the $3,000, less $3 collection charges, to the appellee, in the form of a draft on the Merchants National Bank of Chicago, which was duly paid.

Appellant remitted the check in question to Chicago for collection, and it was duly presented for payment at about noon of September 4th, and payment refused.

It does not appear that the appellee had any notice that the check in question had been drawn by Weed & Co., until the time when it was presented for payment, which, although on the same day, was after the note had been charged back, or its proceeds deducted from the account of Weed & Co., and the letter above copied had been written and sent to them.

The questions arising from this condition of things are :

First.   Was the appellee justified as against A. Weed & Co. in making this deduction ?

Second.   If it was justified against A. Weed & Co. in

making this deduction, had the Bank of Antigo acquired any rights against the appellee at the time the deduction was made which would prevent appellee from making such deduction as against the Bank of Antigo?

Appellee claimed the right to make the deduction because the discount of the note had been procured by fraud. When the note was presented for discount, Hoxie & Mellor, the makers of the note, were hopelessly and irretrievably insolvent, and A. Weed & Co. knew this fact. A. Weed & Co. were also insolvent; neither of which facts were known to the Union Trust Company.

Without lengthening this opinion to the extent necessary to set forth the evidence upon which such a conclusion is reached, it may be said that the evidence fairly establishes that the discount of the note referred to was obtained by Weed & Co. upon representations which were relied upon by appellee, made by Weed & Co. to appellee, which were in fact false and fraudulent, and known at the time to be so by Weed & Co.

The jury to whom the cause was submitted, under proper instructions by the court, must have so found, and we think were fully justified by the evidence in so finding.

But it is contended by appellant that, even if there was such fraud practiced as to justify a rescission, the contract of discount between the appellee and Weed & Co. was an entire contract, and that appellee had not the right to rescind as to the one note for $5,430, without rescinding as to the other two notes for $3,000 each, which was not attempted to be done.

It is doubtful if the question may properly be raised under any error assigned upon the record. But assuming that it may be, we do not think the position is well taken.

The general rule unquestionably is, that where the contract is an entire one, it can not be affirmed in part and rescinded in part; in such a case the contract must be rescinded *in toto*, or not at all.

The original proposition made by Weed & Co. to appellee was to discount for them all or a part of $15,000 of Hoxie

& Mellor paper, which they expected to have on September 1st, and the appellee's reply thereto was that it could "use, say $10,000 of the paper referred to, from September 1st to 4th."

The paper that was sent for discount consisted of three separate notes, as already stated, for $5,430, $3,000 and $3,000 respectively, aggregating $11,430.

The paper that was sent not corresponding in amount with what the appellee had promised to discount, all, or any one, of the notes might have been rejected by the appellee. Appellee did, however, accept the notes that were sent, and mailed back to Weed & Co. a statement which, although on one sheet, was a separate statement concerning each particular note.

Here there were three different notes, entirely separate and distinct from each other, the obligation concerning any one of which was independent of that of the other two, or of any one of them.

The consideration of each one was divisible from that of the others, and was distinctly set forth in the statement furnished.

There was no difficulty in determining the exact sum paid for each note. The contract was as clearly separable as any contract can be when it is made at one time, and affects more than one thing.

The contract, although entered into at one time, was divisible as to both consideration and subject-matter.

In such a case the general rule, stated, becomes qualified, and the contract becomes subject to affirmance as to a part and rescission as to the remainder.

Here, also, checks had been drawn against and paid out of proceeds of the discount of the three notes to an amount exceeding the proceeds arising from the discount of the other two notes, before the fraud was discovered. The fraud as to those two notes had been completely executed, and it was not possible to rescind as to them, nor was it required. Wharton on Contracts, Sec. 748; Cushing v. Rice, 46 Me. 303; Hill v. Rewee, 11 Met. 268; Young & C. Mfg. Co. v.

Wakefield, 121 Mass. 91; Preston v. Spaulding, 120 Ill. 208.

Our conclusion, therefore, is that as against Weed & Co. the appellee had the undoubted right to rescind the contract as was done, to the extent of the returned note for $5,430, and to deduct from Weed & Co.'s account the proceeds arising from the discount of that note and placed to their credit on the books of appellee.

But it is contended by appellant that if the appellee had the right to rescind in the manner it did, as against Weed & Co., it had no such right as against the appellant, Bank of Antigo, a *bona fide* holder of the check in question.

At the time the check in question was drawn and delivered, there were not sufficient funds to the credit of Weed & Co. with the appellee to pay it, and there was never afterward any increase in that credit, except such as arose from the discounting of the three notes. It can hardly be claimed that under such circumstances any superior equity arose in favor of the holder of the check against the money subsequently secured by fraudulent devices, over that existing in favor of the appellee whose money had been thus fraudulently obtained.

Unless, therefore, the drawing and delivery of the check to the cashier of the Bank of Antigo, on September 2d, in some way assigned or appropriated by operation of law, as against the appellee, sufficient of the funds thereafter credited to Weed & Co. to pay the check, the contention of appellant can not be sustained.

What, then, was the effect of the drawing and delivery of the check in question?

As between Weed & Co., the drawers, and the cashier of the Bank of Antigo, the payee, there is no doubt but it operated to assign to the latter so much of the former's deposit as the check called for, and if when presented the drawer had funds on deposit with the appellee sufficient to pay it, the appellee was bound to pay it. Munn v. Burch, 25 Ill. 35; Fourth Nat. Bk. v. City Nat. Bk., 68 Ill. 398; Shaffner v. Edgerton, 13 Brad. 132.

But the rights of the drawee, the appellee, were not fixed until presentation of the check.  If before the check was presented to appellee the drawer's funds on deposit with the appellee had become exhausted by the payment of other checks, the appellee was not bound to pay it.  Daniel on Negotiable Instruments, Secs. 1634, 1638.

The contract between banker and depositor, arising out of universal custom, is that the banker will pay out the money deposited, on the presentation of the depositor's checks against it, in such sums as those checks may specify, in the order of their presentation, and the holder of such a check becomes, as against the bank on which it is drawn, in case the drawee shall at that time have on hand the amount specified in the check, entitled to payment when the check is presented, but not before.   Fourth Nat. Bk. v. City Nat. Bk., *supra.*

Whatever the liability of a banker to the holder of a check drawn against a deposit may be under some supposable conditions, he is not bound to pay a check before presentation, nor unless, when presented, he has on hand sufficient of the drawer's money to pay it.

An amount exceeding the funds arising from the discount of two of the three notes, as we have already seen, had been paid out by appellee, before the check in question was presented.

The remaining funds exceeded by a small sum the amount arising from the discount of the third, or returned, note, and were, to a sufficient extent, appropriated by the appellee to the payment of a debt to itself incurred by the fraud of the drawers of the check.

The debt became due the moment the fraud was discovered, and, as we hold, the contract out of which it arose was properly rescinded by the appellee.

The only way to rescind was the one pursued by the appellee, by taking back to itself the money it had placed to the credit of the drawer's account, and returning the note.

If appellee had the right to rescind because of the fraud, and we have held it had, it had the right to restore to itself

the money obtained by the fraud, which the drawers of the check had not yet obtained, and which still remained in the control of appellee.

There was here no wrongful changing of the situation between the appellee and Weed & Co., to the injury of appellant, as was the case in some of the authorities cited by appellant. It was, on the other hand, a restoration of the right as between them, and appellee having shown, as it was burdened with doing, that it had the right to rescind, there was no wrongful or collusive conduct between appellee and Weed & Co., by which appellant was injured.

The right of appellee to charge back to Weed & Co., or deduct from their account, the money thus fraudulently obtained and passed to their credit, can not be less than that which is well understood would have existed in the case of an ordinary liability matured and owing from a depositor to a banker, as opposed to the rights of the holder of a subsequently presented check. Myers v. Union Nat. Bk., 27 Ill. App. 254; Daniel on Negotiable Instruments, Sec. 326.

Appellee did, it is true, have on deposit to the credit of the drawer, at times between the time the check was drawn and the time it was presented for payment, more than sufficient funds to pay the check, but it had no notice of the drawing of the check until it was presented, and before that time those funds had been substantially exhausted by the payment of other checks and by deducting, rightfully, as we hold, from the account of the drawer the amount of the returned note, so that at the time the check was presented there remained to the credit of the drawer a sum far insufcient to pay the check.

Payment of the check was, therefore, rightfully refused, not only as against Weed & Co., the drawers, but also as against appellant, the holder thereof.

In arriving at this conclusion, we have not been unmindful of what, at first sight, seems to be a strong equity in favor of appellant arising out of the fact that the check which was refused payment was given to appellant by Weed & Co., in payment of a note of Hoxie & Mellor, owned by the appellee,

and on which Weed & Co. were liable as indorsers, and which had come to appellant's hands for collection purposes only.

But appellant was not obliged to accept the check as payment of that note. It could have refused anything but money in payment of it, or could perhaps have sent forward the check for collection before surrendering the note. Choosing, as it did, to treat the check as money, and accepting it as payment of the note, and remitting its own funds to the owner of the note, the appellant is in no position to claim anything from the appellee because it made a mistake in taking the dishonored check as cash.

Where one of two innocent parties must suffer a loss, the one by whose fault the loss occurred must endure it. Jennings v. Gage, 13 Ill. 610; Toledo, W. & W. Ry. Co. v. Gilvin, 81 Ill. 511.

The fact that appellee might probably have suffered the loss of the note if appellant had done its duty and refused aceptance of anything but money in its payment, is no legal excuse for appellant. Appellant chose to adopt the transaction as its own, so far as the collection of the note was concerned, and it must abide the consequence.

We do not think it necessary to comment in detail upon the claim made by appellant that certain rejected evidence should have been allowed to go the jury, that certain other evidence should have been excluded, and that certain instructions asked by appellant and refused should have been given. It is sufficient to say that we consider there was no error in either. The instructions that were given, fairly presented the whole case to the jury, and we think the judgment was correct.

The judgment will therefore be affirmed.