# Bankers' National Bank v. Western Union Cold Storage Co.

1. REFEREES—*Testimony Before, a Part of the Record.*—The statute (R. S., Ch. 117, Sec. 4) concerning referees makes the testimony of witnesses taken before a referee, together with all exhibits and papers introduced in evidence and the report of the referee, a part of the record of the cause.

2. SAME—*Practice Before, Propositions of Law.*—The submission of propositions of law may be dispensed with in cases heard before a referee under the statute. The parties may raise any question of law by exceptions to the report.

3. FRAUD—*Upon Whom a Loss From Must Fall.*—When one of two innocent persons must suffer from the fraud of another the loss must fall on him who by his imprudence has enabled such other person to ·commit the fraud.

4. WAREHOUSE RECEIPTS—*Construction of the Statute—Bills of Lading.* The act entitled, "an act to regulate public warehouses and the ware-· housing and inspection of grain, etc., approved April 25, 1871," has no application to bills of lading.

**Trover.** Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed February 14, 1898.

MASTERSON, FOWLER & HAFT, attorneys for appellant.

H. H. C. MILLER and W. S. OPPENHEIM, attorneys for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellee brought trover against appellant to recover the value of one hundred and one boxes of turkeys. Appellant pleaded not guilty and property in defendant. By agreement, the cause was referred to a referee to take testimony and report his conclusions of law and fact. The referee reported, in substance, viz.:

"On the morning of March 21, L. E. Newman &

Son purchased from defendant one hundred and one boxes of turkeys, at 13 3-4 cents per pound, being 20,132 pounds.  The turkeys were delivered by defendant about 12 o'clock at the Michigan Central depot, and a receipt taken which reads that the turkeys were received from L. E. Newman & Son to be delivered to Conron Bros., New York City; the receipt being made on a blank receipt of the Cold Storage Company, the name of L. E. Newman being substituted for that of the Cold Storage Company.  This receipt was the same day delivered to Newman by defendant's messenger, and with its knowledge, at the plaintiff's bank some time between 12 and 1 o'clock, and that the banks of Chicago close on Saturdays at 12 M.

"About half past eleven a draft was drawn by L. E. Newman & Son for $3,000 on Conron Bros., payable to the order of the plaintiff.  Newman offered the drayage receipt as collateral to the draft, which was refused by Mr. Craft, the cashier.  Said draft was deposited with other deposits to the account of Newman & Son, and then Newman went immediately to the railroad office and secured a bill of lading and returned with it to the bank within an hour after the receipt was presented, and the bill of lading was attached to the draft.  The consignee's name in the bill of lading was written 'Curon Bros.,' without the addition of the word 'order,' or any other condition or limitation.

"Early the following Monday morning Newman & Son learned by telegraph that the draft had been turned down, and then drew all the money to their credit out of the bank, amounting to between $5,000 and $6,000 before the bank knew the draft was dishonored.

"During the week ending March 21, Newman & Son drew out of the defendant's bank $9,322.18.

"The shipment to Conron Bros. was intended to be a partnership deal.

"Conron Bros. refused to go into the deal and turned down the draft which has never been paid.

"On the afternoon of the day of the sale defendant presented to Newman & Son at their place of business an itemized bill for the turkeys, which was not paid, and they sent a statement of the same the following Monday, which was not paid.

"That among the conditions of the bill of lading was 'if the word "order" is written herein immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property the surrender of this bill of lading, properly indorsed, shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading.'

"The Monday following said sale Newman & Son ceased doing business, and subsequently paid all their creditors, except defendant, twenty-five cents on the dollar.

"That on the 23rd day of March, appellant sent Newman & Son a letter rescinding the sale, that when turkeys arrived in New York they were replevined by the defendants; that the bank filed its claim of property, and a stipulation was entered into dismissing suit without prejudice. At the time the turkeys were taken to New York they were worth 15 cents per pound, or $3,019.80, and the Cold Storage paid out for freight, etc., $224.38, leaving the value of the turkeys $2,794.92.

"That Newman & Son for two years prior to March 21, had been depositors in plaintiff's bank, which cashed many drafts for them of similar nature. At the time

of the transaction, Newman & Son made all its deposits with plaintiff.

"That plaintiff was familiar with the business of Newman & Son, and their methods in a general way. That the bank at no time made any inquiries as to the ownership of the turkeys; that the bill of lading was not at any time indorsed or assigned to anyone, by Conron Bros., the consignee, or anyone else.

"Referee believes that by delivering to Newman & Son the drayage receipt, defendant placed it in their power to deal with it as their own and enabled them to procure credit.

"That the fact that Newman appeared anxious to have the receipt sent to the bank, should have put defendant on its guard.

"That the transaction between Newman and the bank was a common one.

"Recommend a judgment in favor of the plaintiff."

Exceptions were filed with the referee and argued before the court by appellant, and judgment entered for appellee of $2.867.12 and costs, from which this appeal is prosecuted.

Appellee contends that if it fails to appear from the abstract that any exception was taken by appellant to the overruling of his exceptions to the referee's report, to its confirmation or to the entering of judgment by the court, and that because the referee's report is made a part of the bill of exceptions, it is not a part of the record, and therefore there is no question for this court to consider, except to determine whether the pleadings are sufficient to sustain the judgment.

The abstract shows, after order overruling defendant's exceptions and confirming referee's report and entering judgment on report, "Exception by defendant." The record shows one order of the court, as indicated by the abstract, and as part of it the following:

"Thereupon the defendant, having entered its exceptions herein, prays an appeal, etc." The bill of exceptions is incorporated in the record by the clerk and made a part of the record by stipulation of the attorneys of the respective parties.

The statute concerning referees also makes the testimony of witnesses taken before the referee, together with all exhibits and papers introduced in evidence, and the report of the referee, a part of the record of the cause. We therefore think that in view of the stipulation and the statute it can make no difference that the referee's report and evidence is incorporated in a bill of exceptions instead of the record proper. The bill of exceptions shows that numerous objections in writing were filed with the referee, and overruled by him, and the exceptions to said report were heard by the court, after which they were overruled, to which ruling the defendant excepted, and thereupon the court confirmed the report of the referee and entered judgment for the plaintiff, to which the defendant excepted. The abstract of the bill of exceptions fails to show the overruling of the defendant's exceptions and the exception to the entry of the order of judgment, but we think that is sufficiently shown as above stated, and therefore we are of opinion that appellee's contentions are not tenable.

Numerous propositions of law on behalf of appellant were held and refused by the court, but we think it unnecessary to consider the court's action in that regard, because the submission of propositions of law may be dispensed with in cases heard before a referee under the statute. The parties may raise, by exceptions to the report, any questions of law. Sanitary Dis. v. Cook, 169 Ill. 189.

Also, from a careful examination of the evidence, we are satisfied the referee reported the facts correctly,

that his conclusions thereon are in accordance with the law of this case, and there was no error in confirming his report, nor in the entry of judgment in favor of appellee.

The sale by appellant to Newman & Son was not shown to be a sale for cash on delivery of the turkeys, and the circumstances in evidence clearly show a delivery to the transportation company by appellant for Newman & Son, with the knowledge on its part, or knowledge of facts sufficient to cause it to believe, that Newman & Son intended to pledge the turkeys to the appellee.

There was no notice to the bank that Newman & Son were not the owners of the turkeys, nor was there any circumstance in the transaction between it and Newman & Son to put the bank on inquiry as to their ownership.

We think the evidence quite clear that the bank was in the position of *bona fide* purchaser for value without notice of any rights of appellant—that appellant is to blame for placing Newman & Son in a position to perpetrate a fraud upon it, as is claimed. This case is clearly one for the application of the rule of law, that when one of two innocent persons must suffer from the fraud of a third, the loss shall fall on him who, by his imprudence, enabled such third person to commit the fraud. Michigan C. R. R. Co. v. Phillips et al., 60 Ill. 190, and cases cited; Western Union R. R. Co. v. Wagner et al., 65 Ill. 197; Williams v. Fletcher, 129 Ill. 356.

We think the Phillips case, *supra*, is decisive of the case at bar.

We have examined the cases of Stone v. R. R. Co., 9 Ill. App. 48; Barnard v. Campbell, 55 N. Y. 456; Howland v. Woodruff, 60 N. Y. 73, and Canadian Bank v. McCrea, 106 Ill. 281 (which seem to be especially

relied on by appellant), as well as numerous other cases cited, but are of opinion they are readily distinguishable from the Phillips case, *supra*, as well as the case at bar.

We think the statute relating to warehouse receipts has no application to bills of lading, and therefore the cases cited by appellant, on its contention in that regard, are not applicable to this case.

The judgment is affirmed.