Argued February 5, affirmed February 25, 1919.

## BRIDGES *v.* HURLBURT.

(178 Pac. 793.)

**Taxation—Restraining Collection—Tender of Tax Admitted Due.**

1.   A suit to enjoin the collection of any tax in excess of the balance alleged due cannot be maintained without tendering and bringing into court the tax admitted to be due.

   [As to injunction to restrain the collection of taxes and assessments, see note in 69 **Am. Dec.** 198.]

**Principal and Agent — Scope of Apparent Authority — Principal's Responsibility.**

2.   Where plaintiffs, seeking to enjoin the sheriff from collection of taxes, had constituted and held out another as their agent for payment thereof, they were responsible for the agent's shortcomings, and the sheriff was not required to notify plaintiffs of their agent's attempt to pay taxes with his own worthless checks.

**Taxation—Collection—Payment by Worthless Check—Rescission.**

3.   The sheriff is not authorized to collect less than the one half of the tax due, and where land owners' agent delivered owners' checks, together with his own, in payment of tax due, the sheriff, upon finding agent's check worthless, could rescind the transaction, recover the receipt, and return the part paid to the agent.

**Estoppel—Fraud—Innocent Parties—Party Making Fraud Possible.**

4.   Where plaintiffs held one out as their agent for payment of taxes, and the agent delivered plaintiffs' checks, together with his own worthless check, to the sheriff, who returned to agent the money received thereon and recovered his receipt, the innocent plaintiffs, and not the innocent sheriff, must bear the consequences of the fraud they put the agent in position to perpetrate.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

The defendant is the sheriff of Multnomah County. The complaint states substantially that the three plaintiffs are the owners of certain realty in Portland upon which there was due on October 4, 1916, $2,450.08, being the principal and interest on the first half of the taxes for that year, and on the following day the additional amount of $2,311.40 for the remaining half, and that about October 4th the plaintiffs had an agreement

with one W. G. Seckendorf whereby he undertook to
pay the first half of the taxes, in pursuance of which
he secured from the sheriff a receipt showing that he
had performed his covenant in that respect. They
say that he obtained from the plaintiff Anna Herrall
her check for $462.28 which he was to apply in dis-
charge of her share of the second half of the taxes,
and that in discharge of their proportion thereof the
plaintiffs Rose Bridges and Kate Strode caused to be
delivered to the sheriff on October 5th their several
checks each for $924.56 and that the officer afterwards
collected the money on the last two checks aggregating
$1,849.12.  The complaint further narrates in sub-
stance that Seckendorf presented his own check to the
defendant for $462.28, in payment of the plaintiff Her-
rall's share of the second half, but the check was not
good and the sheriff was unable to collect any money
thereon; further, that the defendant issued his tax re-
ceipt in the name of "W. G. Seckendorf, Panama
Building, City of Portland," showing the entire tax
for 1915 to be paid, which receipt Seckendorf exhib-
ited to the plaintiffs, whereby they were led to believe
that the taxes had been fully paid and that they were
so informed by the defendant early in October, 1916,
and had no knowledge to the contrary until February
2, 1917.  It is further stated that the sheriff dis-
covered early in October, 1916, that all the checks
which Seckendorf had delivered in payment of the
taxes were not good, for want of funds to pay them,
except the two checks issued by the plaintiffs Bridges
and Strode; that he gave no information to any of the
plaintiffs of those facts, but that he obtained from
Seckendorf the return of the receipt, which the sheriff
canceled.  It appears from the plaintiffs' pleading
that Seckendorf delivered another check to the sheriff

about November 18, 1916, for $5,085.00 for the purpose of discharging all the taxes, interest and penalties, which check also turned out to be worthless. It is said, too, that the sheriff at first marked the taxes paid, but on the discovery of the worthlessness of the checks as stated, he obtained a return of the receipt from Seckendorf, canceled it and marked the cancellation on the assessment-roll, but that he did not return to the plaintiffs Bridges and Strode the money which he had collected on their checks; neither did he give them credit for the payment, notwithstanding all of which, he has advertised the property for sale for delinquency for the entire amount of the taxes, interest, penalties and costs.

The plaintiffs claim that on October 4th and 5th they were ready, able and willing to pay all of the taxes then due upon the property and are now ready and willing to pay whatever tax the court shall agree they should pay, which they allege to be $2,912.36. Contending that the conduct of the defendant in advertising the property constitutes a cloud upon their title, they pray that the court will adjudge that they owe $2,912.36 and no more, in full payment for all tax charges against the property for 1915; that the defendant be required to satisfy the taxes in full upon the county record, and be enjoined from advertising the property as delinquent, and for further relief.

After certain denials the substance of the answer is that Seckendorf was the authorized agent of the plaintiffs for the payment of the taxes; that he as such agent gave the defendant his check for the first half of the taxes, but that there were no funds in the bank upon which it was drawn for the payment thereof, discovering which, the sheriff demanded the return of the receipt issued therefor. Thereupon, in payment of all

the taxes, Seckendorf presented the two checks of the plaintiffs Bridges and Strode for $924.56 each, aggregating $1,849.12, together with other checks which were useless as afterwards discovered, whereby the sheriff was induced to issue a receipt in full, but having soon afterwards ascertained the worthlessness of all the checks except those of the plaintiffs Bridges and Strode, he demanded a return of the receipt in full and gave back to Seckendorf on his demand the bad checks and the sheriff's check on his own bank for the aggregate amount of the valid Bridges and Strode checks, which latter in the meantime he had deposited to his credit in another bank.

The new matter of the answer was challenged by the reply. From a decree dismissing the suit the plaintiffs appeal.                                        AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Messrs. Hurlburt & Layton, Mr. Paul P. Farrens* and *Messrs. Platt & Platt,* with oral arguments by *Mr. Wm. B. Layton* and *Mr. Farrens.*

BURNETT, J.—1. Virtually this is a suit to enjoin collection of any tax in excess of the balance that would have remained after deducting $1,849.12 as of date October 5, 1916, from the total charge as it then stood. This cannot be accomplished without tendering and bringing into court the amount of tax admitted to be due. The Oregon cases on this point are collated by Mr. Justice BEAN in *Cannon* v. *Hood River Irr. Dist.,* 79 Or. 71 (154 Pac. 397).

2. The complaint shows that the plaintiffs had agreed with Seckendorf that he should pay the first

half of the taxes. This constituted him their agent for that purpose and, in the absence of the defendant's knowledge to the contrary, amounted to holding him out as their representative in the settlement of all the taxes. The plaintiffs do not claim that the sheriff had any notice whatever of the limitations upon his commission in that behalf. So far as the record discloses, Seckendorf in his dealings with the sheriff was acting in the apparent scope of his authority respecting the whole of the taxes. He was the intermediary which the plaintiffs had established in their dealings with the sheriff. The latter had a right to regard him as their representative. For all that appears in the evidence, the defendant was entitled to believe that the crooked dealings of Seckendorf were due to the acquiescence or default of the plaintiffs themselves. In other words, having held Seckendorf out as their representative, the plaintiffs were responsible for his shortcomings. Nor was it incumbent upon the sheriff to notify the plaintiffs of the wrongdoings of Seckendorf.

3. Our statute permits one half of the taxes to be paid on April 5th of each year and the last half on October 5th of the same year, subject to an interest charge for nonpayment. The tax-collector is not authorized to receive less than that amount in discharge of taxes. On discovery of the deceit of Seckendorf the sheriff had a right to rescind the transaction of which it was a part and in doing so he was justified in returning all that he had received by virtue of the transaction, when demanding a return of the receipt he had issued. In doing that he was entitled to return the checks to the person from whom he had received them. In our judgment, the great preponderance of the testimony is to the effect that the sheriff

received not only the sham checks, but the valid Bridges and Strode checks direct from Seckendorf. Mrs. Strode's son was the only witness who testified in behalf of the plaintiffs in support of their allegation that Mrs. Strode and Mrs. Bridges had caused their checks to be delivered to the defendant. The son, however, in describing what he had to do with those checks, said:

"There seems to be a dispute about that, but it is my honest contention and belief that I mailed both of those checks to the sheriff's office, along with the other checks and statements which I have here in my possession."

Seckendorf's testimony, together with that of the deputies of the sheriff in charge of such matters, constitute a preponderance of the testimony to the effect that the two valid checks in question were received direct from Seckendorf.

4. But, taking all the testimony together, independent of whether the son mailed the two checks to the sheriff or whether they came from Seckendorf direct, the testimony plainly shows that the plaintiffs held out Seckendorf as their agent for the purpose of paying the taxes, and the defendant was authorized to treat with him in that capacity. It seems to be a case where the plaintiffs have placed Seckendorf in a position in which he could act fraudulently; that he has done so and that the plaintiffs must bear the consequences of his wrongdoing, although they themselves may in fact be innocent of any intention to deceive: *Fiore* v. *Ladd,* 22 Or. 202 (29 Pac. 435); *Copeland* v. *Tweedle,* 61 Or. 303 (122 Pac. 302); *Bankers' National Bank* v. *Western Union Cold Storage Co.,* 73 Ill. App. 410; *Stoney Creek* v. *Smalley,* 111 Mich. 321 (69 N. W.

722) ; *Hall* v. *Catherine Creek Development Co.,* 78 Or. 585 (153 Pac. 97, L. R. A. 1916A, 996).

The decree of the Circuit Court is affirmed.

Affirmed.

McBride, C. J., and Benson and Harris, JJ., concur.