Submitted on briefs at Pendleton May 5, affirmed June 10, 1919.

## GRANT CHROME CO. *v.* MARKS.

### (181 Pac. 345.)

**Corporations—De Facto Corporations—Rights.**

1. As between private parties, the right of a *de facto* corporation to act as a corporation cannot be questioned.

[As to *de facto* corporations, see note in 118 Am. St. Rep. 253.]

**Corporations—De Facto Corporations.**

2. Where there was an attempt in good faith to organize a corporation and the corporation proceeded to exercise corporate functions and elected corporate officers and expended large sums of money in operating and developing a mine, as a corporation, it was a *de facto* corporation, although the articles of incorporation were not filed in the office of the county clerk as required by law.

**Appeal and Error—Issues in Lower Court—Defenses not Pleaded.**

3. In an action by a lessee for a mine, defendant, who in framing his pleading stood entirely on denials of the allegations in plaintiff's complaint and on the single affirmative allegation that he was an innocent purchaser cannot on appeal take advantage of an affirmative allegation in the answer of the owner of the premises, from whom he had leased the mine, that the plaintiff had abandoned and forfeited his lease, the owner not appealing from a judgment in favor of plaintiff.

From Grant: DALTON BIGGS, Judge.

In Banc.

This is a suit in equity brought by the plaintiff, as a corporation, claiming to be the assignee of a certain lease and option contract, executed by the defendants, Marks and Thompson, for a Chrome iron mine in Grant County, Oregon.

The contract in question was originally executed on the twenty-third day of May, 1917, by the defendants, Marks and Thompson, to one Gustave Pinson, and is an agreement to sell for the price of $5,000, part of which purchase price is to be paid in the way of royalty of $2 per ton for the iron ore extracted. It also contains the following leasing provisions:

"That said lessors do hereby grant, demise and let unto the said lessee, his heirs, executors, administrators and *assigns,* for the term of *three years* from the date of the execution of this instrument, the aforesaid described mining property. * *

"To have and to hold unto the said lessee for the aforesaid term of three years, unless sooner forfeited or determined for any cause, or for any breach of any covenant herein set forth. * *

"In consideration of such demise the said lessee doth covenant and agree with said lessors to enter immediately upon said mine or premises, and work the same mine fashion in manner necessary to good and economic mining, so as to take out the greatest amount of ore possible, and not less than —— tons annually * * and pay the aforesaid royalty upon the delivery of the ore at the railway station at Prairie City, Oregon; all of the ore to be extracted from said premises and deliver the same, as aforesaid, with all convenient speed in lots as mined."

On the eighteenth day of June, 1917, Pinson executed an instrument purporting to convey the aforesaid lease and option to the plaintiff herein. After the execution of this assignment one O. C. Irwin, claiming to act as president and manager of the plaintiff company, took possession of the mine in question, and proceeded to develop and operate the same for several months, expending, as the testimony on behalf of plaintiff tends to show, about $8,000 upon this work. About the 1st of September, being unable to market the ore, the work was discontinued, and Irwin left the mine and proceeded East, to try to negotiate a market for the ore. The tools were first left at the mine, but after a short time, some of them being stolen and carried away, the portable tools were taken and stored at the place of a neighbor living somewhere in the vicinity.

The defendants, Marks and Thompson, seem to have become dissatisfied with the way the plaintiff was proceeding, and made another lease on the same property to the defendant Tarnow, who went into possession, and was in possession of the mine, at the time of the commencement of this suit.

The defendants, Marks and Thompson, after denying in their answer the incorporation of the plaintiff, and most of the other allegations of the complaint, proceeded to allege affirmatively in substance, that Pinson and those representing him under the contract, had forfeited and abandoned their right to the mine, by failing to comply with the conditions of the contract, and by going away and leaving the mine.

The defendant, Tarnow, also answered and after making substantially the same denials as the other defendants, alleged affirmatively that he was an innocent purchaser, leasing the property without notice of plaintiff's claim, but *does not allege abandonment or forfeiture of the lease.*

There was a decree in the court below in favor of plaintiff and against all of the defendants. From this decree the defendant Tarnow appeals. The defendants, Marks and Thompson, do not appeal.

AFFIRMED.

For appellant there was a brief submitted over the names of *Mr. J. Thorburn Ross* and *Mr. John L. Rand.*

For respondent there was a brief submitted over the names of *Mr. J. W. Biggs* and *Mr. George H. Cattanach.*

For defendants J. D. Marks and W. K. Thompson there was a brief submitted by *Mr. A. D. Leedy.*

BENNETT, J.—There are only two questions presented in the briefs. First: Whether or not the plaintiff sufficiently established the fact that it was a corporation, authorized to accept the assignment of the lease from Pinson, and (second) whether or not there was such a forfeiture and abandonment of the lease established by the defendants, as destroyed the rights of the plaintiff thereunder.

On the eighteenth day of June, 1917, Irwin, Dugdale and Pinson executed the articles of incorporation, but these articles were not acknowledged until the succeeding 11th of July, and a copy of the same was not filed with the corporation commissioner of the state until the thirteenth day of the same month; and a copy never was filed in the office of the county clerk of Grant County, as required by law.

Nevertheless, on the same day the articles of incorporation were executed, the stock of the corporation was subscribed for by Irwin, Dugdale and Pinson, and they proceeded to organize the company by electing directors, president, vice-president, secretary, treasurer, etc.

1, 2. It is not now claimed by the plaintiff that the corporation was sufficiently organized to become a corporation *de jure;* but it is claimed that sufficient had been done to make it a corporation *de facto,* and that between private parties its right to act as a corporation cannot be questioned.

In 1 Thompson on Corporations, Section 229, it is said that the essential elements of a corporation *de facto* are:

"(1) A law or charter providing for the organization of corporations of the kind attempted to be organized; (2) an attempted good-faith compliance with the statutory requirements intended as conditions pre-

cedent to corporate existence; (3) an unintentional omission of some legal requirement; (4) the exercise in good faith of corporate functions.''

And, again, in Section 234, it is said:

''But in the nature of the case, and under the definition given, if some step in the progress of the organization is unintentionally omitted, and the other requirements are present, there will be a corporation *de facto*. The accidental failure to comply with some legal requirement, is one of the elements of the corporate existence *de facto*, otherwise, it would be a corporation *de jure*. A very common omission of strict or substantial compliance is found in the failure *either to properly execute, acknowledge or record the certificate of incorporation or articles of association*. The general rule is that the mere failure to properly execute and acknowledge the certificate, or the failure to record the certificate of articles of association, will not be fatal to the existence of a corporation *de facto*.''

To the same effect is 1 Fletcher Cyc. of Corporations, Section 278, and our own state decisions follow this doctrine: *Marsters* v. *Umpqua Oil Co.,* 49 Or. 374 (90 Pac. 151, 12 L. R. A. (N. S.) 825); *Splonskofsky* v. *Minto,* 62 Or. 560 (126 Pac. 15); *Alder Slope Ditch Co.* v. *Moonshine Ditch Co.,* 90 Or. 385 (176 Pac. 593).

In the case at bar the law unquestionably authorizes the creation of such a corporation; there was an attempt, apparently in good faith, to organize the corporation, and the corporation proceeded to exercise corporate functions. The evidence shows that it elected corporate officers, took over the contract for the lease of the mine, and expended large sums of money in operating and developing the mine, all ostensibly as a corporation.

Miller and Kimball, two witnesses called by the defendants, testified that they were working for the ''Grant Chrome Co.'' and it must have been generally

understood that Irwin represented that company in his operations at the mine.

Under such conditions it seems that the rule in regard to *de facto* corporations applies, and that the plaintiff had sufficiently established it was such a corporation.

3. As to the question of abandonment and forfeiture by the plaintiff, the appellant Tarnow does not seem to be in a position to raise these questions.

In framing his own pleading he saw fit to stand entirely upon his denials of the allegations in plaintiff's complaint, and upon the single affirmative allegation that he was an innocent purchaser in good faith.

There was no allegation in his answer of any abandonment on the part of plaintiff, or of any failure to comply with the conditions of the contract. The defendants, Marks and Thompson, who did raise this question in their answer, do not appeal; and we think appellant cannot take advantage here of affirmative allegations in their answer, which were not in his own. If he had desired to raise these questions he should have pleaded the fact upon which such a claim could be based.

The instrument executed by Marks and Thompson was a lease for a definite period, as well as an option, and as it did not contain any express provision for a forfeiture, it may be doubted whether such a forfeiture could be enforced, even if Marks and Thompson were appealing: 2 Taylor on Landlord & Tenant, § 489; 2 Tiffany on Landlord & Tenant, § 193; 27 Cyc. 708. But this question we do not find it necessary to decide.

As to appellant's claim that he was an innocent purchaser, we think that cannot be sustained under the evidence. Both Marks and Thompson testified that he

was shown the lease before he made his lease, and sub-
stantially knew all about the transaction.

Having notice and knowledge, therefore, of the fact
that the lease had been executed, and not having
pleaded any forfeiture or abandonment, or failure to
comply with the terms of the lease, we think he has
failed to sustain his only affirmative defense.

The judgment of the court below is affirmed.

AFFIRMED.