Argued at Pendleton November 1, 1922, affirmed January 2, 1923.

# NORTHERN PACIFIC RY. CO. ET AL. *v.* JOHN DAY IRRIGATION DISTRICT ET AL.

### (211 Pac. 781.)

**Taxation — Constitutional Guaranty of Equal Taxation Does not Refer to Special Assessments.**

1. Irrigation District Law, Section 24 (§ 7328, Or. L.), providing for special assessments on the lands within the district for the ensuing year is not a violation of Constitution, Article I, Section 32, or Article IX, Section 1, insuring equal and uniform taxation, since those sections have no relation to special assessments for benefits to the property.

**Constitutional Law — Waters and Watercourses — Irrigation Assessment per Acre Does not Deprive of Equal Protection of Law.**

2. An irrigation assessment per acre of each irrigable acre within the district is not a violation of Constitution of the United States, Amendment 14, guaranteeing equal protection of the laws, as taking without due process of law.

**Waters and Watercourses—Order Declaring Organization of Irrigation District Conclusive Against Collateral Attack.**

3. A finding of a County Court declaring the organization of an irrigation district from which no appeal has been taken within the ten days allowed therefor by Section 7306, Or. L., and which has not been questioned by any proceeding under the Confirmatory Act (§§ 7358, 7360, Or. L.), to test its validity, is conclusive against a collateral attack in a proceeding for the cancellation of warrants issued by the district.

**Waters and Watercourses—Corporate Existence of Irrigation District cannot be Questioned in Action to Cancel Warrants.**

4. The corporate existence of an irrigation district which at least has a *de facto* status is not questionable in a proceeding to cancel warrants, but must be undertaken as a separate proceeding, under Section 366, Or. L.

**Waters and Watercourses—Assessment not Within Limitation on Power to Tax.**

5. An irrigation district assessment is not within the limitation to tax for governmental purposes imposed by the 6 per cent limitation tax amendment (Const., Art. XI, § 11).

**Waters and Watercourses—Proof of Publication of Notice of Meeting of Irrigation District Equalization Board not Jurisdictional.**

6. The absence of proof of publication of the notice when the board of equalization of an irrigation district will sit is not a jurisdictional defect where the notice has been duly published as required by Section 7329, Or. L. (Irrigation District Code, § 25), particularly in view of the Confirmatory Act (§ 7360, Or. L.), offering a remedy which was not exercised.

**Waters and Watercourses — Directors of Irrigation District Hold Offices Until Successor Qualified.**

7. Under Sections 7308, 7309, directors of an irrigation district hold offices until their successors are elected and qualified.

**Waters and Watercourses—Directors of Irrigation District have Discretionary Power to Contract for Investigation and Survey to Determine Feasibility of Project.**

8. The board of directors of an irrigation district have the discretionary power to contract with an engineer to investigate and survey to determine the feasibility of the project, and subsequent unhappy developments will not invalidate their action.

**Waters and Watercourses — Compensation Warrants to Engineer, After He and Directors Knew Project was not Economically Feasible, Properly Canceled.**

9. Warrants given an engineer as compensation for services rendered the district under contract, after he and the directors knew or should have known that the project as organized was not economically feasible, *held* properly canceled, though the compensation to other officers was legally fixed by the directors.

**Waters and Watercourses—Directors Unauthorized to Give Picnic, or Send Member to Irrigation Congress, or Pay Attorney for Services Before Organization.**

10. Directors of an irrigation district possess no power to incur liability upon the district for the purpose of providing a picnic, for compensation to an attorney for services rendered prior to its organization, or for paying the expenses of any person while attending an irrigation congress.

**Waters and Watercourses—One Endeavoring to Invalidate Warrants not Entitled to Partial Relief Where No Tender Made.**

11. One seeking to invalidate irrigation district warrants, who makes no tender of that which may be found to be lawfully due from him, is not entitled to partial relief, though it appears some of the warrants in fact unlawfully issued.

From Morrow: GILBERT W. PHELPS, Judge.

In Banc.

This suit was instituted in the Circuit Court for Morrow County, Oregon, by the Northern Pacific Railway Company, a corporation of Wisconsin, and others, against John Day Irrigation District, and others. The defendant, John Day Irrigation District, is a municipal corporation organized pursuant to the Irrigation District Law of this state. Joined

with the plaintiff, Northern Pacific Railway Company, are other owners of land situate within the District. The codefendants of the John Day Irrigation District are its directors, secretary, attorney and the engineers of. the district with whom the municipality had contracted for the making of preliminary surveys, plans and estimates for a contemplated system of irrigation works.

The original complaint was filed on March 31, 1921. A demurrer having been interposed thereto and sustained, an amended complaint, with leave of court, was filed on August 1, 1922. The complaint, as amended, avers seven causes of suit separately stated. The first cause alleges the illegality of an assessment made by the district and attacks the constitutionality of the Irrigation District Law, and especially Section 7328, Or L., relating to assessments. The second cause further assails the assessment as illegal and void, and challenges the sufficiency of the notice of the hearing in the County Court in the matter of the organization of the district. The third again objects to the assessment, which is averred to be contrary to the provisions of the Six Per Cent Tax Limitation Amendment, designated Section 11, Article XI, of the Constitution of Oregon. The fourth alleges the absence of sufficient publication and proof of notice of equalization of the assessment. The fifth avers that the contract with Lewis & Clark, engineers, is *ultra vires* and fraudulent. The sixth alleges that a certain supplemental contract with the same parties is illegal, on like grounds. The seventh asserts that certain warrants were issued fraudulently and *ultra vires* to the directors, secretary and attorney, and seeks their cancellation.

John Day Irrigation District, by an order of the County Court of Morrow County bearing date July 12, 1919, was declared to be duly organized pursuant to the provisions of the Irrigation District Law of this state. Some time prior to May 27, 1919, a petition for the organization of the district, bearing date May 14, 1919, was circulated among owners of land situate within the boundaries of the proposed district, and was duly filed with the county clerk. Notices of the presentation of the petition for a hearing thereon were published in the counties of Umatilla, Morrow and Gilliam, these being the counties in which the lands of the proposed district were situate. The affidavit of the printer of the "Arlington Independent," published in Gilliam County, is to the effect that notice of a hearing was published in the issues of June 14, 21, 28, July 5 and 12, 1919. The affidavit of the printer of the "Heppner Herald" shows the publication of the notice in Morrow County on May 27, June 3, 10, 17, 24 and July 5, 1919. Affidavit of the printer of the "Hermiston Herald," of Umatilla County, shows that the notice of hearing was published in Umatilla County May 31, June 7, 14, 21, 28 and July 6, 1919.

A special meeting having been called by the County Court of Morrow County upon July 12, 1919, to consider and act upon the petition for the organization of the John Day Irrigation District, the court found, upon the hearing, among other things, that the requisite number of owners of lands irrigated or susceptible of irrigation within the district had signed the petition, and "that the petition and notice of the time of presentation thereof have been duly published for the time and in the manner required by law." It further found that notice of the presenta-

tion of the petition, and the petition itself, had been published in each of the three counties, *viz.:* Umatilla, Morrow and Gilliam, "once each week for at least four successive weeks before the time the same were presented for consideration." The court assumed that it had jurisdiction to consider the petition, and, after a hearing upon all the material allegations thereof, it entered an order defining the boundaries of the proposed district and directed that the county clerk give notice of an election to be held within the proposed district for the purpose of determining whether it should be organized as an irrigation district under the provisions of the Irrigation District Law. The notice was published and the election was had, at which the electors voted for the organization of the district. M. D. Clark, C. C. Clark and John Kilkenny were elected directors. On September 2, 1919, after two of the directors had qualified, they met and elected C. C. Clark, president, F. R. Brown, secretary, and F. A. McMenamin, attorney, for the district. John Kilkenny failing to qualify as director, Edward Reitman was, by resolution of the board of directors, selected in his stead.

On June 2, 1920, the board of directors entered into a contract with defendant John H. Lewis for the performance of the necessary investigation and surveys to determine the feasibility of the project and the best method of putting water on the lands of the district. Lewis entered upon the discharge of his duties under his contract.

On September 7, 1920, notice having been given, a budget was adopted by the directors of the irrigation district. An assessment was ordered and levy made of fifty cents per acre on each of 225,000 irrigable acres of land situate within the district. Notice was

given of the meeting of the board of equalization, as provided by statute, and the board met and equalized the assessments against the irrigable lands therein. The assessment-roll was thereafter filed in the offices of the county clerks of Gilliam, Morrow and Umatilla Counties.

On March 31, 1921, the original complaint hereinbefore referred to was filed in the Circuit Court of Morrow County by the plaintiff, Northern Pacific Railway Company, and others, including some of the signers of the original petition for the formation of the district. To the suit filed by the plaintiffs, Lewis & Clark and John H. Lewis filed their answer. The other defendants joined in a separate answer.

As a result of the trial the court sustained the original Lewis contract as valid when made, but was of opinion that it should have been canceled or changed upon the discovery by the contracting parties that the district did not include necessary lands to make the proposed irrigation system economically possible. However, the court did determine that such knowledge was acquired by all of the parties not later than January 4, 1921, the date of the supplemental contract. The court ordered the cancellation of something like $40,000 in warrants issued to the engineers, but adjudged them to be entitled to payment of $20,000, and referred the matter of their additional compensation to the board of directors, with the right to sue if settlement could not be had. The plaintiffs state in their brief:

"Many of the warrants issued to the other defendants were canceled insomuch that there is but little additional relief now desired against the directors and secretary, but appellants feel aggrieved that all the warrants issued to the attorney were not canceled."

The plaintiffs appealed, and assigned as error that portion of the findings and decree opposed to their contention. Defendants Lewis & Clark and John H. Lewis did not appeal. The other defendants did appeal. Defendant Edward Reitman appeared in this court at the hearing, by his attorneys, Van Vactor & Butler, and moved that the appeal be dismissed as to him. A similar motion was made by M. D. Clark. The district, appearing by Sam E. Van Vactor, also asked that its appeal be dismissed.    AFFIRMED.

For appellants there was a brief over the names of *Mr. L. B. De Ponte, Mr. Geo. T. Reid, Mr. C. H. Winders* and *Mr. C. A. Murray,* with an oral argument by *Mr. De Ponte.*

For other complainants and appellants there was a brief over the names of *Messrs. Carter & Smyth, Messrs. Woodson & Sweek* and *Mr. L. B. De Ponte.*

For respondents John Day Irrigation District et al., there was a brief over the names of *Mr. C. H. Finn, Mr. F. A. McMenamin* and *Mr. S. A. Van Vactor,* with an oral argument by *Mr. Finn.*

For respondents Lewis & Clark and John H. Lewis, there was a brief over the name of *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Harrison Allen.*

For respondent Morrow County there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Willis S. Moore,* Assistant Attorney General, with an oral argument by *Mr. Moore.*

BROWN, J.—The defendants filed demurrers to the first cause of suit, and the court's ruling thereon is

assigned as error. The plaintiffs contend that the Irrigation District Law, Act of 1917, Chapter 357, and especially Section 24 thereof (Or. L., § 7328), violates Section 1 of Article IX of the Constitution of Oregon, because it "prevents an assessment in proportion to benefits"; that the act is in violation of the Fourteenth Amendment to the Constitution of the United States for the same reason; that—

"The particular assessment in controversy is in violation of both of said constitutional provisions because it is arbitrary and without regard to proportionate benefits."

Article IX, Section 1, Oregon Constitution, reads:

"The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation * * ."

Among other things, the Fourteenth Amendment provides:

" * * Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

That section of the Irrigation Code under consideration reads, in part:

"The board of directors shall, on or before the first Tuesday in September of each year, make a computation of the whole amount of money necessary to be raised by said district for the ensuing year, for any and all purposes whatsoever in carrying out the provisions of this act, including estimated delinquencies on assessments.

"Said amount of money, when so determined by said board, shall be and constitute an assessment upon all of the land included in said district, and shall be apportioned by said board to the lands owned or held by each person, * * so that each acre of

irrigable land in the district shall be assessed and required to pay the same amount as every other acre of irrigable land therein, except as hereinafter otherwise provided.'' Or. L., § 7328.

It is further provided for the determination of the number of irrigable acres owned by each land owner of the district and the proportionate assessments as nearly as may be from available information, and it enacts that in the event that a substantial error has been made in such determination, proper adjustment may be made at the next equalization of the annual assessment.

It will be borne in mind that the assessment in question was at the rate of fifty cents per acre, levied on each acre of irrigable land within the district for the purpose of financing a budget mentioned in plaintiffs' complaint, for the redemption of outstanding warrants and paying the expenses of surveys and salaries of officers. In other words, it was for necessary preliminary purposes.

1. The first question is: Does the assessment, made in conformity with the provisions of the Oregon Irrigation District Law, conflict with Article IX, Section 1, of our Constitution? Our answer must be in the negative. This ruling is sustained by a uniform line of Oregon decisions. This restriction contained in the Oregon Constitution has no relation to special assessments for benefits to property. It relates to taxation for governmental purposes. The term ''taxation,'' as used in Article I, Section 32, and Article IX, Section 1, of the Constitution, was early defined, in *King* v. *City of Portland,* 2 Or. 146. The opinion in that case, delivered by Mr. Justice WILSON, has frequently been cited and followed in later cases, and no departure has ever been made by our

court from this early exposition of these constitutional provisions.

In *Ladd* v. *Gambell,* 35 Or. 393, 397 (59 Pac. 113), Mr. Justice BEAN, in announcing the opinion of the court, said:

"It was early held in this state that the provisions of the Constitution that 'all taxation shall be equal and uniform' (Art. I, § 32), and that 'the legislative assembly shall provide by law for uniform and equal rate of assessment and taxation' (Art. IX, § 1), have no application to special assessments for street improvements: *King* v. *City of Portland,* 2 Or. 146."

*King* v. *City of Portland, supra,* was again cited with approval in *Masters* v. *City of Portland,* 24 Or. 161, 167 (33 Pac. 540). See also *Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263, 13 L. R. A. 533); *King* v. *Portland,* 38 Or. 402 (63 Pac. 2).

In *Kadderly* v. *Portland,* 44 Or. 118, 157 (74 Pac. 710, 75 Pac. 222), the court said:

"The fourth contention of plaintiffs, that Section 401 violates the Constitution of Oregon, Article IX, Section 1, which provides for an equal rate of assessment and taxation, may be disposed of with the simple statement that the assessment of property for the cost of street and sewer improvements, in proportion to the benefits derived, is not 'assessment and taxation' within the meaning of this section of the Constitution. This rule is so well settled that it would be superfluous to cite authority in its support."

There are many decisions from other jurisdictions to similar effect.

2. The next question presented relates to the averred conflict of the statute with that portion of the Fourteenth Amendment hereinbefore set out.

In a number of decisions by this court, the Irrigation District Law has been declared to be a valid and constitutional law: *Links* v. *Anderson,* 86 Or. 508 (168 Pac. 605, 1182); *Gard* v. *Peck,* 91 Or. 33 (178 Pac. 186); *Hanley Co.* v. *Harney Valley Irr. Dist.,* 93 Or. 78 (180 Pac. 724, 182 Pac. 559); *Medford Irr. Dist.* v. *Hill,* 96 Or. 649, 657, 190 Pac. 957). But the specific point relating to the assessment of each irrigable acre at the same rate has not been before the court for consideration. However, rulings have been made by this court that apply by analogy, and these decisions are cited in support of the validity of the section of the statute assailed.

In *Colby* v. *City of Medford,* 85 Or. 485 (167 Pac. 487), this court, speaking through Mr. Justice HARRIS, said:

"The decision of this court in *King* v. *Portland,* 38 Or. 402 (63 Pac. 2, 55 L. R. A. 812), affirmed by the United States Supreme Court in 184 U. S. 61 (46 L. Ed. 431, 22 Sup. Ct. Rep. 290, see, also, Rose's U. S. Notes), forecloses debate about the validity of the front-foot rule of assessment."

The following authorities illustrate the principle of the section of the act involved herein:

"A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account. If that possibility does not invalidate the act it would be surprising if the corresponding fact should invalidate an assessment. Upholding the act as embodying a principle generally fair and doing as nearly equal justice as can be expected, seems to import that if a particular case of hardship arises under it in its

natural and ordinary application, that hardship must be borne as one of the imperfections of human things." *Louisville etc. R. Co.* v. *Barber Asphalt Pav. Co.*, 197 U. S. 433 (49 L. Ed. 819, 25 Sup. Ct. Rep. 466, see, also, Rose's U. S. Notes).

Another instructive case is that of *Webster* v. *Fargo,* 9 N. D. 208 (82 N. W. 732, 56 L. R. A. 156), affirmed in 181 U. S. 394 (45 L. Ed. 912, 21 Sup. Ct. Rep. 623, see, also, Rose's U. S. Notes). This case involved an assessment against the abutting property owners for paving a street, in proportion to frontage. The court held that this was not contrary to the Fourteenth Amendment of the federal Constitution as taking property without due process of law, notwithstanding the assessment might exceed the actual increase in the value of the abutting property by reason of the paving.

The case of *Myles Salt Co.* v. *Iberia etc. Drainage Dist.*, 239 U. S. 478 (60 L. Ed. 392, 36 Sup. Ct. Rep. 204, L. R. A. 1918E, 190), is cited by plaintiffs as announcing a doctrine fatal to the defendant district's method of taxation. In that case there was an island high and dry, situate within the boundaries of the drainage district, and it was held by the court that an assessment and the collection of a tax on the island for the drainage improvement would constitute depriving the owner of property without due process of law. We think that case has no application to the facts in the cause at issue. In the instant case there is no authority by the statute to assess other than irrigable lands. This tax is levied upon irrigable acres only.

*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes), is a leading case and is often cited

by text-writers and courts in irrigation and drainage district cases. In that case the court said:

"Irrigation is not so different from the reclamation of swamps as to require the application of other and different principles to the case."

A case in principle very similar to the one at bar is that of *Houck* v. *Little River Drainage Dist.*, 239 U. S. 254, 262 (60 L. Ed. 266, 36 Sup. Ct. Rep. 58). There, as here, the owners of a large tract of land embraced within the drainage district attempted to restrain the collection of a flat-rate assessment per acre, levied generally upon the lands within the district for the purpose of paying its preliminary expenses. Among other things, the complaint averred that the proceeding had been *in invitum;* that the lands of the district varied in value; that no benefits had accrued, or would accrue from plaintiff's lands, either upon the expenditure of the moneys sought to be raised by tax or from the carrying out of the proposed plan; that a large portion of the lands in the district, and those of the plaintiff in large part, were to be condemned for a right of way for ditches and catch-basins, and that the tax had been levied against every acre within the district as a level tax, without regard either to relative value or to benefits, or to the fact that portions of the lands would be damaged and other portions would be taken by condemnation, or that a large extent of territory, if added to the district as it had been proposed, would receive the benefit of the tax without being charged with any part. Mr. Justice Hughes, in speaking for the court, said:

" * * With respect to districts thus formed, whether by the legislature directly or in an appropriate proceeding under its authority, the legislature

may itself fix a basis of taxation or assessment; that
is, it may define the apportionment of the burden,
and its action cannot be assailed under the Four-
teenth Amendment unless it is palpably arbitrary
and a plain abuse.   These principles have been es-
tablished by repeated decisions: *Hagar* v. *Reclama-
tion Dist.*, 111 U. S. 701, 709 (28 L. Ed. 569, 572,
4 Sup. Ct. Rep. 663); *Spencer* v. *Merchant,* 125 U. S.
345, 353, 356 (31 L. Ed. 763, 766, 767, 8 Sup. Ct. Rep.
921); *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112,
167, 168 (41 L. Ed. 369, 391, 392, 17 Sup. Ct. Rep.
56); *Bauman* v. *Ross,* 167 U. S. 548, 590 (42 L. Ed.
270, 288, 17 Sup. Ct. Rep. 966); *Parsons* v. *District
of Columbia,* 170 U. S. 45, 52 (42 L. Ed. 943, 946,
8 Sup. Ct. Rep. 521); *Williams* v. *Eggleston,* 170
U. S. 304, 311 (42 L. Ed. 1047, 1049, 18 Sup. Ct. Rep.
617); *Norwood* v. *Baker,* 172 U. S. 269, 278 (43 L. Ed.
443, 447, 19 Sup. Ct. Rep. 187); *French* v. *Barber
Asphalt Paving* Co., 181 U. S. 324, 343 (45 L. Ed.
879, 889, 21 Sup. Ct. Rep. 625); *Wight* v. *Davidson,*
181 U. S. 371, 379 (45 L. Ed. 900, 904, 21 Sup. Ct.
Rep. 616); *Wagner* v. *Leser,* 239 U. S. 207 (60 L. Ed.
230, 36 Sup. Ct. Rep. 66). * * It is true that the
elaborate inquiry which is to follow the organiza-
tion of the district may show the advisability of
bringing in other lands (*Squaw Creek Drainage Dist.*
v. *Turney,* 235 Mo. 80, 138 S. W. 12). * * But none
the less, the organization of the district takes effect
when it is duly constituted by the judgment of the
court. * * As a public corporation with defined mem-
bership the district, when established, is empowered
to go forward with the expert investigations and
surveys which of necessity must precede the adop-
tion of a complete scheme.   The outcome of these
studies cannot be absolutely predicted; they may
even result in the abandonment of the project. * *
The ultimate contention, then, is that the plaintiffs
in error cannot be subjected to this preliminary tax
of twenty-five cents an acre because their lands, as
they insist, will not be benefited by the plan of drain-
age.   In authorizing the tax, it is said the legis-

lature has departed from the principle of benefits, and the tax is asserted to be *pro tanto* an uncompensated taking of their property for public use. * * The power of segregation for taxing purposes has every-day illustrations in the experiences of local communities, the members of which, by reason of their membership, or the owners of property within the bounds of the political subdivision, are compelled to bear the burdens, both of the successes and of the failures of local administration. When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed accordingly, but even in such case, there is no requirement of the Federal Constitution that for every payment there must be an equal benefit. The state, in its discretion, may lay such assessments in proportion to position, frontage, area, market value, or to benefits estimated by Commissioners: *Davidson* v. *New Orleans,* 96 U. S. 97, 106 (24 L. Ed. 616, 620); *Walston* v. *Nevin,* 128 U. S. 578, 582 (32 L. Ed. 544, 546, 9 Sup. Ct. Rep. 192); *Spencer* v. *Merchant,* 125 U. S. 353, 356 (31 L. Ed. 763, 766, 767, 8 Sup. Ct. Rep. 921); *Bauman* v. *Ross,* 167 U. S. 548, 590 (42 L. Ed. 270, 288, 17 Sup. Ct. Rep. 966); *French* v. *Barber Asphalt Pav. Co.,* 181 U. S. 324, 343 (45 L. Ed. 879, 889, 21 Sup. Ct. Rep. 625); *Wight* v. *Davidson,* 181 U. S. 371, 379 (45 L. Ed. 900, 904, 21 Sup. Ct. Rep. 616). And, as we have said, unless the exaction is a flagrant abuse and by reason of its arbitrary character is mere confiscation of particular property, it cannot be maintained that the state has exceeded its taxing power: *Wagner* v. *Leser,* 239 U. S. 207 (60 L. Ed. 230, 36 Sup. Ct. Rep. 66). We find no such arbitrary action here. It was not necessary to base the preliminary tax upon special benefits accruing from a completed plan.''

The federal questions here involved were determined by the District Court of the United States in the case of *Northwestern Improvement Co.* v. *John*

*Day Irr. Dist.*, decided in February, 1922. In the decision of that case, upon a motion to dismiss under the federal practice, the court said:

"In the absence of any more specific constitutional restriction than general prohibition against taking property without due process of law, the legislature of the state, in fixing the sum necessary to be levied for a public improvement, is authorized to determine both the amount of the tax and the class of lands which shall be benefited."

The motion to dismiss was sustained.

Writers on taxation have frequently observed that no system of assessment of taxation has ever been devised that is equally fair in the abstract. Equality can only be attempted. It is never accomplished. The most that can be done is to approximate equality: *Bowes* v. *Aberdeen*, 58 Wash. 535 (109 Pac. 369, 30 L. R. A. (N. S.) 709). The problem of assessing irrigable lands has been carefully studied since the adoption of the Irrigation Code. The law-making body of Oregon has given that subject a great deal of attention, and as a result of its investigation has adopted the rule of assessment expressed in Section 24 of the Irrigation District Law. The provisions of that section express a rule well calculated to secure equality of assessment in its ordinary application to the irrigable lands of this state. We conclude that the assessment of each irrigable acre at the rate of fifty cents per acre, as provided by the section of the statute under consideration, does not deprive the plaintiffs of the equal protection of the law. The court committed no error in sustaining the demurrer to the first cause of suit.

3. It is alleged in plaintiffs' amended complaint that the assessment upon their lands is illegal and

void and should be canceled, for the reason that the John Day Irrigation District was not lawfully organized. It attacks the validity of the formation of the district on jurisdictional grounds by reason of imperfection in the publication of notice of the presentation of the petition to the County Court. It attaches the proof of the publication to the amended complaint as an exhibit, likewise the order made by the County Court upon the hearing of the petition for the organization of the district as a municipal corporation. We have already referred to the publication of these notices in the statement. From the record it appears that the lands comprising the district are situate in three counties, the greater portion thereof being located in Morrow and Umatilla Counties, and about 6 or 7 per cent in Gilliam County. This is the county in which it is claimed that the notice of hearing on the petition was not published for the statutory period of four full weeks. Objection is not made to the character of the notice, nor is it claimed that plaintiffs appeared in the County Court at all, or that they ever contemplated appearing in that court. On the other hand, the record shows that the County Court had full and complete jurisdiction of more than 90 per cent of plaintiffs' lands, from which to establish an irrigation district. It likewise appears that the order of the court was made upon the twenty-ninth day of the publication of the notice printed in Gilliam County. Excluding the first day, the order was made on the twenty-eighth day of its publication, but before the expiration of that day. The County Court found that due publication of notice was had, and, believing that it had acquired jurisdiction of the subject matter, considered the petition and all

of the material allegations contained therein.   The court determined that the petition contained the signatures of the requisite number of owners of irrigable lands.   It determined the boundaries of the proposed district, and directed that the question of the formation of the irrigation district be submitted to the electors as provided by law.   Pursuant to the provisions of the Irrigation Code, the court having found that the notice of the time of the presentation of the petition had been duly published as required by that Code, it follows that "said order as so made and entered shall be conclusive evidence of the facts found by the court, subject to an appeal to the Circuit Court within ten days from the entry of such order": Section 7306, Or. L.; *Links* v. *Anderson*, 86 Or. 508 (168 Pac. 605, 1182); *Herrett* v. *Warmsprings Irr. Dist.*, 86 Or. 343 (168 Pac. 609).   The plaintiffs never appealed from this order.   They did not attempt to test it by the writ of review for errors appearing upon the face of the record, nor did they seek protection under the Confirmatory Act, which provides, at Section 7360, Or. L., that:

"Any freeholder, legal voter or assessment payer within an irrigation district or drainage district may, within thirty (30) days after the entry of any order, or the performance of any of the acts mentioned in Section 7358, and for which a contest is by said section provided, bring a like proceeding in the circuit court of the county where the lands embraced within such district, or the majority thereof, are situated, to determine the validity of any of the acts, orders or things enumerated in this act, and concerning which the right of contest is by said act given."

Section 7358 specially provides, among other things, for a judicial examination and judgment as to the regularity and legality of any action or pro-

ceeding of the County Court declaring the organization of any irrigation district or its proceedings in connection with the organization thereof. In this act there is express statutory authority to go behind the determination of the proceedings had in the County Court: *Tulare Irr. Dist.* v. *Shepard,* 165 U. S. 1, 11 (46 L. Ed. 773, 22 Sup. Ct. Rep. 531, see, also, Rose's U. S. Notes).

In the original complaint the plaintiffs set out confirmatory proceedings had by the district, as mentioned in our statement, but in the amended complaint no reference is made to such proceedings. In considering the ruling of the court upon the demurrer, we are held to the averments of the complaint as amended, and cannot take into consideration the confirmatory proceedings had in determining whether or not grounds of suit are stated in their second cause.

We have referred to the statute for the purpose of pointing out a remedy that was open to the plaintiffs by the laws of this state, if they wanted a remedy.

4. The finding made by the County Court is conclusive in a collateral attack. Plaintiffs' suit is a collateral attack upon the existence of John Day Irrigation District. It is, therefore, not important in determining this case whether the defendant Irrigation District is a corporation *de jure* or *de facto.* If it be a *de jure* corporation, the plaintiffs' suit necessarily falls. Upon the other hand, if it be a *de facto* corporation, the plaintiffs have no right to make a collateral attack upon its existence.

A leading case defines the term "collateral attack" as follows:

"A collateral attack on a judgment or decree is any proceeding which is not instituted for the express purpose of annulling, correcting or modifying such decree." *Morrill* v. *Morrill,* 20 Or. 96 (25 Pac. 362, 23 Am. St. Rep. 95, 11 L. R. A. 155).

Under the facts as they appear of record, John Day Irrigation District is at least a *de facto* corporation. The Irrigation District Law of this state, under which it in good faith attempted to organize, is a valid law, contravening neither the Constitution of the United States nor that of this state. There has been an actual user of the corporate powers of the municipal corporation which might have been rightfully used as such an organization. That the effort made to organize under the Irrigation District Law was made in utmost good faith, there can be no question. That the district exercised its powers as a municipal corporation appears abundantly from the record.

That the validity of a *de facto* corporation cannot be inquired into in this proceeding is the doctrine of the Oregon authorities: *Marsters* v. *Umpqua Oil Co.,* 49 Or. 374 (90 Pac. 151, 12 L. R. A. (N. S.) 825); *Leavengood* v. *McGee,* 50 Or. 233 (91 Pac. 453); *Umatilla Water Users' Assn.* v. *Irvin,* 56 Or. 414 (108 Pac. 1016); *Brown* v. *Webb,* 60 Or. 526 (120 Pac. 387, Ann. Cas. 1914A, 148); *Splonskofsky* v. *Minto,* 62 Or. 560 (126 Pac. 15); *Alder Slope D. Co.* v. *Moonshine D. Co.,* 90 Or. 385 (176 Pac. 593); *Grant Chrome Co.* v. *Marks,* 92 Or. 443 (181 Pac. 345); *Rees* v. *Valley View Drainage Dist.,* 101 Or. 65 (199 Pac. 178); see, also, *Bennett Trust Co.* v. *Sengstacken,* 58 Or. 333, 352 (113 Pac. 863); *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 336 (124 Pac. 637, Ann. Cas. 1914C, 483); *Tyree* v. *Crystal Dist.*

*Imp. Co.,* 64 Or. 251 (126 Pac. 605); *State* v. *Adler,* 71 Or. 70 (142 Pac. 344).

In the case of *Splonskofsky* v. *Minto,* 62 Or. 560 (126 Pac. 15), this court, speaking through Mr. Justice BURNETT, cited with approval the following:

"Judge Thompson, writing in 10 Cyc. 252, says: ' * * A corporation *de facto* exists when there is (1) a charter or statute under which a corporation with the powers assumed might have been organized; (2) a *bona fide* attempt to organize a corporation under such a charter or statute; (3) an actual user of the corporate powers, or some of them, which might have been rightfully used by such an organization. Such being the proper conception of a corporation *de facto,* it follows that a substantial compliance with the law in effecting a corporate organization is not necessary to constitute the body a corporation *de facto,* because that makes it a corporation *de jure.*' "

The court held that the existence of this corporation could not be collaterally attacked, and that the statutory procedure for dissolution should be followed.

The general doctrine, as set down in 1 McQuillin, Municipal Corporations, Section 151, is to the effect that—

"A municipal corporation may exist *de facto.* * * The general doctrine has been thus broadly stated that a *de facto* corporation may legally perform every act which the same entity could perform, were it a corporation *de jure.* Its existence and acts are valid against all the world, even against the state except in direct proceedings to arrest its usurpation of power. Hence, where a reputed corporation is acting under forms of law unchallenged by the state, the validity of its organization cannot be drawn in question by private parties, nor can its existence be collaterally attacked."

To similar effect are 7 McQuillin, Supp., § 151; 1 Dillon, Municipal Corporations, § 67; 14 C. J., § 216.

The case of *Miller* v. *Perris Irr. Dist.*, 85 Fed. 693, 699, is much in point. It was a suit for a decree declaring illegal and void the proceedings for the organization of the Perris Irrigation District of the State of California, and for the cancellation of the bonds issued by the district, and enjoining its board of directors from taking a deed to certain property of a complainant, that had been sold for taxes. It was also sought to enjoin forever further taxation or assessments on his land by the officers of the district. Among the questions presented in that case was this: Can the validity of the organization of the Perris Irrigation District be called in question in this state? In answer to its own question, the court proceeds to say:

"Complainant contends that the proceedings for the organization of the Perris Irrigation District are wholly void for the reason that no notice was ever given of the petition presented to the board of supervisors, and, therefore, the existence of the district may be attacked by private persons. * * I do not understand, however, that in applying the rule that the existence of a *de facto* corporation can be questioned only at the suit of the state which created it, there is any room or place for the distinction sometimes observed between things that are void and things that are voidable. The rule sustained by the overwhelming current of authorities and based on considerations of public policy, is that where a reputed corporation is acting under forms of law, unchallenged by the state, the validity of its or~ ~nization cannot be drawn in question by private parties. Corporate franchises are granted to sovereignty only, and, if the state acquiesces in their usurpation, individuals will not be heard to complain. Neither the nature nor extent of an ille-

106 Or.—11

gality in its organization can affect the existence of a reputed corporation if the requisites just stated are present; that is, if such corporation be acting under color of law, and the state makes no complaint. Where these requisites concur, there is a *de facto* corporation. Such corporation may legally perform every act which the same entity could perform were it a corporation *de jure: People* v. *La Rue,* 67 Cal. 526 (8 Pac. 84). * * The organization by a state of its domestic corporations is matter of local policy, and upon questions relating solely thereto the federal courts follow the decisions of the state courts of last resort: *Tregea* v. *Board of Directors,* 164 U. S. 179 (41 L. Ed. 395, 17 Sup. Ct. Rep. 52). Both upon reason and authority, I hold that the validity of the organization of the Perris Irrigation District as the same is disclosed by the bill, cannot be called in question in this suit.''

We have quoted extensively from the above case because it is cited with approval by the United States Supreme Court in *Tulare Irr. Dist.* v. *Shepard,* 185 U. S. 13 (46 L. Ed. 773, 22 Sup. Ct. Rep. 531, see, also, Rose's U. S. Notes), which is a similar case to the one in issue here. The latter case contains a valuable discussion in relation to *de facto* corporations and the futility of collateral attacks.

Section 366, Or. L., provides:

''An action at law may be maintained in the name of the state upon the information of the prosecuting attorney, or upon the relation of a private party against the person offending, in the following cases: (1) when any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in the corporation, either public or private, created or formed by or under the authority of this state; or * * (3) when any association or number of persons act within this state as a corporation without being duly incorporated.''

See *State* v. *Evans,* 82 Or. 54 (160 Pac. 140); *State ex rel.* v. *Deschutes County et al.,* 88 Or. 661 (173 Pac. 158).

In *Brown* v. *Webb, supra,* Mr. Justice BEAN, in speaking for this court, said:

"The legality of such an organization (*de facto* corporation) can be questioned only by the state in a suit brought for that purpose."

In *Marsters* v. *Umpqua Oil Co., supra,* this court said:

"The legality of its organization cannot, therefore, be inquired into in this action. It was at least a *de facto* corporation, and the rightfulness of its existence can be questioned by the state only."

See, also, *Tyree* v. *Crystal Dist. Imp. Co., supra.* The court properly sustained the demurrer to the plaintiffs' second cause of suit.

5. The plaintiffs argue that the assessment contravenes the provisions of Section 11 of Article XI of the Oregon Constitution because it was not authorized by a vote of the land owners. This section is usually denominated the Six Per Cent Limitation Tax Amendment to the Constitution. It reads, in part:

"Unless specifically authorized by a majority of the legal voters voting upon the question, neither the state nor any county, municipality, district or body to which the power to levy a tax shall have been delegated shall, in any year, so exercise that power as to raise a greater amount of revenue for purposes other than the payment of bonded indebtedness or interest thereon than the total amount levied by it in the year immediately preceding for purposes other than the payment of bonded indebtedness or interest thereon, plus six per centum thereof."

This constitutional provision has no application to the assessment under consideration. We have already referred to the distinction between general taxes for the support of the government or of the state and its political subdivisions, and assessments for the benefit of property. The difference existing between taxation for general governmental purposes by the state or its political subdivisions, and assessment for local improvements, was well understood by the people of the state for a period of half century prior to the adoption of the Six Per Cent Tax Limitation Amendment. See authorities collected and cited in *Mayor of Birmingham* v. *Klein,* 89 Ala. 461 (7 South. 386, 8 L. R. A. 369, 374).

6. Plaintiffs aver that the assessment was void for want of sufficient publication and proof of notice of the meeting of the board to equalize the same. Section 25 of the Irrigation District Code, designated Section 7329, Or. L., relates to the notice of meeting of the board of equalization. It reads:

"On or before the first Tuesday in September of each year the secretary of the board shall give notice of the time the board of directors, acting as a board of equalization, will meet for the purpose of reviewing and correcting its assessment and apportionment of taxes, as in this act provided, by publishing the same in a newspaper published in each of the counties in which the district is situate. The time when the board shall meet for said purpose shall be the first Tuesday of October following, and in the meantime the assessment list and record shall remain in the office of the secretary of the board, for the inspection of all persons interested, and all persons shall be presumed to have notice of the time of such meeting, whether he received actual notice or not."

It is within the power of the state to prescribe and give effect to rules of evidence: *Fong Yue Ting* v.

*United States,* 149 U. S. 698, 729 (37 L. Ed. 905, 13 Sup. Ct. Rep. 1016, see, also, Rose's U. S. Notes); *Lindsley* v. *National Carbonic Gas Co.,* 220 U. S. 61, 81 (55 L. Ed. 369, 31 Sup. Ct. Rep. 337, Ann. Cas. 1912C, 160).

Section 26 of the Irrigation District Code, designated Section 7330, Or. L., constitutes the board of directors of the irrigation district a board of equalization, and requires the board to meet on the first Tuesday of October of each year and continue in session from day to day

"as long as may be necessary to hear and determine any objections by any interested persons to the assessments and apportionment thereof, and any other matters connected therewith that may come before them, and the board shall change its assessment and apportionment thereof and the list and the record of the same as to irrigable acreage, description, etc., in any respect and in such manner as may be necessary to make the same just and in accordance with the facts."

Section 27 of the Irrigation District Code, designated Section 7331, Or. L., relates to the levy of the assessments and the collection thereof.

The plaintiffs challenge the assessment because, they say, there was no proof of publication of the notices filed with the board at the time it was in session. This is not a jurisdictional defect. The law fixes the date upon which the board shall meet. It provides for publication of notice. In the case at bar, notice was published in the newspapers as required by that law. The filing of proof of publication with the board is not a requisite of the right of the board to act. The decisions upon this point cited by plaintiffs do not sustain their contention. The sections of the Irrigation District Code relating

to assessment provide proper notice and ample opportunity to be heard, and therefore due process of law is afforded.

We have already seen that the law of this state provides a method for testing the legality of the organization proceedings of an irrigation district by a taxpayer. It likewise enacts and prescribes the procedure by which any assessment payer within an irrigation district may have a judicial examination and judgment as to the regularity and legality of the proceedings of the board in levying any assessment, general or special. The Confirmatory Act, after providing the procedure for contesting the acts enumerated in Section 7358 thereof, concludes with the following:

"No contest of any proceeding, matter or thing by this act provided to be had or done by the board of directors or supervisors, or by said district, or by the county court, or by any freeholder, legal voter or assessment payer within the district, shall be had or maintained at any time or in any manner, except as herein provided."

The plaintiffs had thirty days in which to institute proceedings under this act for the purpose of contesting the assessment. No such proceedings were attempted. The Confirmatory Act furnishes the taxpayer a remedy for the purpose of reviewing all proceedings of the board of equalization.

7. The old directors of John Day Irrigation District continued to serve as such officers until their successors were elected and qualified: Sections 7308, 7309, Or. L. Before the newly elected directors were entitled to succeed the old board, it was necessary for them to take their respective oaths of office and file official bonds, as provided in the Irrigation District Code. The law is plain and evidently means

what it says when it declares that a director of an irrigation district shall serve until his successor shall be elected and qualified. Similar language has been construed by this court: *State* v. *Colvig,* 15 Or. 57 (13 Pac. 639); *State* v. *Compson,* 34 Or. 25 (54 Pac. 349); *State* v. *Kellaher,* 90 Or. 538 (177 Pac. 944). Also see 23 R. C. L. 554; 29 Cyc. 1319.

8. It is asserted that there was a confidential relation existing between the engineers and the board of directors at the time of the execution of the contract made on June 2, 1920. This claim is not borne out by the testimony. This contract between the district and the engineers was a lawful contract. We have carefully perused all the evidence adduced upon the trial of the cause; likewise, we have studied the findings of the trial court and the conclusions of law drawn therefrom. While this case is tried anew here upon the record, the trial judge, who saw the witnesses upon the witness-stand and noted their manner ·while testifying, is in a better position to judge of their credibility than is this court from a study of the lifeless typewritten pages of the testimony. The board of directors of John Day Irrigation District possessed the discretionary power to make the contract involved herein, and while entering into its agreement with Lewis the board kept well within the limitation of its power. No fraud is shown, nor has the authority of the directors been manifestly abused: *Avery* v. *Job,* 25 Or. 512 (36 Pac. 293); *Dougan Co.* v. *Klamath County,* 99 Or. 436 (193 Pac. 645). The record discloses that the contract was made when agricultural products and farm lands were at peak prices. However, soon after the letting of the contract the price of grain, hay, wool and livestock declined greatly; likewise,

the value of agricultural lands receded, and what many had believed to be a feasible undertaking from an economical viewpoint became a disappointment. This possibly had its effect in persuading some of the petitioners for the formation of the district to become plaintiffs in this cause. It is not a case of fraud, but one where, under the conditions as they now exist, in looking backward it can be said that the board of directors may have erred in judgment. While the record may disclose that the board was not composed of the "wisest men of their time," yet it fails to show that they intentionally wronged the district to its financial loss.

9. There came a time after the execution of the contract, when it was known to Lewis, and when the board of directors knew, or should have known, that the project as organized was not economically feasible, and the court properly ordered the cancellation of the warrants issued to the engineers for services after that time.

The compensation of the officers other than the board of directors is lawfully fixed by the board.

10. The directors of an irrigation district possess no authority, as such, to incur a liability upon the part of the district for the purpose of providing a picnic, regardless of the motive on their part.

It is claimed and proved that in some instances the directors drew a *per diem* in excess of that fixed by statute. The law provides:

"The directors shall each receive $3 per day and mileage at the rate of ten cents per mile, in attending meetings, and actual and necessary expenses paid while engaged in official business under the order of the board." Sec. 12, Chap. 357, Laws of 1917.

There is no authority under the Irrigation District Law for payment of an attorney by the district, for services performed prior to its organization.

The record fails to show any reason for paying the expenses of any person while attending an irrigation congress. The warrants covering such charges should have been canceled.

11. We have carefully considered the many alleged errors contained in the record before us. We have not commented at length upon all, because this opinion is already too long.

In view of the fact that many of the warrants were canceled after the making of the budget and the levying of the assessment, it appears to the writer that it would have been entirely proper to reduce the assessment accordingly, provided the state of the case afforded the opportunity. He who seeks equity must do equity. We cannot reduce the rate of assessment in the absence of the plaintiffs' tender into court of that which is lawfully due: *Bridges* v. *Hurlburt,* 91 Or. 262 (178 Pac. 793).

The decree appealed from is affirmed.

AFFIRMED.